Roxanna CAMPBELL, William C. Orr, Alden Kautz, John Grandbouche, Don Turner, William Johnson and Roy Peister, Plaintiffs,

and

Mountain States Legal Foundation, Plaintiff in Intervention,

v.

ARAPAHOE COUNTY SCHOOL DISTRICT # 6, Littleton, Colorado; Joint District 28–J of the Counties of Adams and Arapahoe, Aurora, Colorado; The City of Aurora, and the following individuals: Doyle K. Seawright, Douglas A. Johnson, Wm. Davis, DeWitte C. Gordon, John G. Stuart, Michael T. Vaggalis, Carolyn Francisco, Charles B. McClure, Marjorie Petersen, Kenneth P. Schoonover, Fred Hood, Alice Dudich, Jack Everhart, Spencer Garrett, Wm. Cobern and W. Robert Semple, Defendants.

Civ. A. No. 76–M–1069.

United States District Court, D. Colorado.

May 19, 1981.

Roxanna Campbell, William C. Orr, Alden Kautz, John Grandbouche, Don Turner, William Johnson, Roy Peister, pro se.

Gale A. Norton, Mountain States Legal Foundation, David Dominick, Cogswell, Chilson, Dominick & Whitelaw, Denver, Colo., for plaintiff in intervention.

William K. Malone, Banta, Hoyt, Malone & Banta, Englewood, Colo., Carol M. Welch, Hall & Evans, Denver, Colo., for Arapahoe County School District # 6, Littleton, Colorado, Michael T. Vaggalis, Carolyn Francisco, Charles B. McClure, Marjorie Petersen and Kenneth P. Schoonover.

Richard W. Comfort, Jr., Holland & Hart, Denver, Colo., for Joint District 28–J of the Counties of Adams and Arapahoe, Doyle K. Seawright, Douglas A. Johnson, William A. Davis, DeWitte C. Gordon and John G. Stuart.

Patrick E. Kowaleski, City Atty., for the City of Aurora, Denver, Colo., for City of Aurora, Fred Hood, Alice Dudich, Jack Everhart, Spencer Garrett, William Cobern and W. Robert Semple.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The plaintiffs seek a summary judgment declaring that the defendants acted unlaw-

fully in attempting to influence voter opposition to a proposed amendment to the Colorado Constitution. That amendment, which was submitted and disapproved at the general election on November 2, 1976, was placed on the ballot by petition in the exercise of the power of initiative reserved to the people in Article V, Section 1 of the state constitution. The proposal was to add a new section, reading as follows:

Section 21. Any other provision of this constitution, or of any statute, home rule charter, territorial charter, resolution or ordinance to the contrary notwithstanding, no tax may be instituted, implemented, imposed, restored or increased, by any method, by the state or any political subdivision thereof, without the prior affirmative vote thereon of a majority of the registered electors residing within the jurisdictional boundaries of the taxing authority imposing the tax in question, at a general or special election.

For the purposes of this section the term 'tax' shall include any and all devices by which wealth in any form is transferred from persons, natural or artificial, to any level of government of the state or any political subdivision thereof.

Any tax legally authorized prior to the effective date of this section shall be valid only to the extent and rates at which it is actually being imposed on the effective date hereof.

The intent of this section is to require elector approval of governmental acts which result in new or increased taxes. This section is in all respects self-executing.

The ballot question, labelled Amendment No. 10, was as follows:

An Amendment Adding A New Section 21 to Article X of the Constitution of the State of Colorado Requiring Registered Elector Approval of All State and Local Executive or Legislative Acts Which Result in New or Increased Taxes.

Each of the individual plaintiffs signed the initiating petition and actively supported the proposal. Among the individual plaintiffs, there are persons who are residents, taxpayers and qualified electors within the jurisdictional boundaries of each of the defendant governmental entities. Joint District 28–J, the Counties of Adams and Arapahoe (Aurora Public Schools or APS) and Arapahoe School District No. 6 (District 6) are school districts created under Colorado statutes with limited power to impose an ad valorem tax and to spend public funds for the purpose of operating public school systems. They are governed by boards of education whose members are elected by voters living in the respective districts. The City of Aurora (City) is a home rule city, created by a charter pursuant to Section 6 of Article XX of the Colorado Constitution. Such a city has taxing power and governmental authority over local and municipal matters and is governed by a city council elected by the voting residents of the city.

The named individual defendants are persons who were members of the school boards and city council at the time of the adoption of resolutions authorizing the actions which the plaintiffs have challenged. Pursuant to those duly adopted resolutions, District 6 made a cash contribution of $100.00 and made contributions in kind valued at $749.73 for the campaign opposing Amendment No. 10. The Aurora Public Schools made a cash contribution of $300.14 and in kind contributions valued at $1,658.04 to that campaign. The City made a cash contribution of $1,000.00 and made in kind contributions valued at $205.00 in support of the opposition to the initiated proposal.

The cash contributions consisted of public funds raised through various means of taxation, and the in kind contributions consisted of the time of employees paid from public funds, the use of publicly owned facilities and the use of materials purchased with public funds.

■ The individual plaintiffs have all proceeded *pro se* in this litigation. They clearly have standing to pursue the claim for declaratory judgment because they have asserted an injury-in-fact to their freedoms of speech and assembly protected by the

First Amendment to the United States Constitution and each of them has a "personal stake" in the controversy. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Additionally, as taxpayers within the defendant governmental units they have an immediate and direct interest in preventing misapplication or misuse of public funds by their elected representatives where the expenditures result in a reduction of the plaintiffs' effectiveness in their attempt to persuade the people of Colorado to exercise their sovereign power. This is not a case in which the taxpayers claim only a financial impact from payments out of the public treasury. Cf. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); and *Massachusetts v. Mellon*, 262 U.S. 447, 486, 43 S.Ct. 597, 600, 67 L.Ed. 1078 (1923).

The plaintiff-in-intervention, Mountain States Legal Foundation, is a Colorado nonprofit corporation which provides legal representation on selected public interest questions. It has alleged that its membership includes persons with the same interests as the individual plaintiffs and there is no challenge to that allegation.

■ Amendment No. 10 proposed a restriction on the scope of the agency granted to all forms of representative government in Colorado. It was a call for a change in organic law by direct action of the state's electorate through the initiative.

The common contention of all of the defendants in this case is that such a limitation on the power of all elected officials to govern within their respective jurisdictions was a matter of "official concern" to all Colorado cities and school boards and, accordingly, the governmental actions opposing it were within the grant of authority from the General Assembly in that section of the Colorado Campaign Reform Act of 1974 which has been codified in 1973 C.R.S. § 1–45–116, reading as follows:

(1) No agency, department, board, division, bureau, commission, or council of the state or any political subdivision thereof shall make any contribution or contribution in kind in campaigns involving the nomination, retention, or election of any person to any public office. They may, however, make contributions or contributions in kind in campaigns involving only issues in which they have an official concern. In such instances, unless specifically approved by the governing board or legislative body of the political subdivision involved:

(a) No public funds or supplies shall be expended or used;

(b) No employee or paid officer, other than the candidate, shall work on a campaign during working hours or use any public facility or equipment in a campaign during working hours;

(c) No transportation or advertising involving public property or funds shall be provided for the purpose of influencing, directly or indirectly, the passage or defeat of an issue;

(d) No employee or officer shall be granted leave from his job or office with the public agency, with pay, to work on a campaign.

The fundamental flaw in that argument is that it proceeds from the false premise that the Campaign Reform Act is a grant of power to defendants. The stated purposes of that statute are found in 1973 C.R.S. § 1–45–102, as follows:

The general assembly hereby finds and declares that the interests of the people of this state can be better served through a more informed public; that the trust of the people is essential to representative government; and that public disclosure and regulation of certain campaign practices will serve to increase the people's confidence in their elected officials. Therefore, it is the purpose of this article to promote public confidence in government through a more informed electorate.

It is apparent from the provisions restricting the amounts of contributions and imposing the reporting requirements for political committees that the Colorado legislature

has attempted to place limits on propagandizing public issues. Accordingly, a fair reading of the statute is that it is restrictive of whatever powers were previously possessed by agencies of government in Colorado.

While the language of § 1–45–116 is somewhat convoluted, it clearly prohibits the use of public funds or property in campaigns involving candidates for any public office. It then gives a qualified permission for expenditures by units of government in a campaign "involving only issues in which they have an official concern." Additionally, contributions in cash or in kind, which are defined specifically in subparagraphs (a) through (d), must be specifically approved by the governing board or legislative body of the political subdivisions involved. The defendants did adopt resolutions authorizing the contributions and contributions in kind. Therefore, the key question in this case is whether the campaign concerning Amendment No. 10 can be considered one which involved only issues of official concern to the defendant school districts and city. That question is answered in the negative.

In a memorandum opinion in support of a preliminary injunction granted in *Mountain States Legal Foundation v. Denver School District No. 1*, 459 F.Supp. 357 (D.Colo. 1978), I said that the characterization of a campaign issue as being of "official concern" to a school district's board of education must be determined by reference to the official powers and duties delegated by the General Assembly in the school laws. I continue to hold that view. I do not doubt that the school district defendants sincerely believed that the adoption of this restrictive constitutional amendment would have a devastatingly destructive impact on the functioning of public education in Colorado. Also, I do not doubt that the school district defendants had a special interest in the election because of their official role as elected school board members responsible for providing public educational opportunities. The ballot question, however, was much broader in its scope. Passage of the proposal would have resulted in a revolutionary change in the financing and functioning of all governmental activities in Colorado.

The City of Aurora defendants seek to separate themselves from the school districts by contending that a home rule city created under Article XX of the Colorado Constitution is autonomous over matters of local and municipal concern, including financing city government. Therefore, it is argued that changing the constitution to restrict the City's authority must be a matter of official concern to those charged with the responsibility for municipal government. Again, I have no reason to doubt the sincerity of the city council members in their belief that this amendment would have been very detrimental to the functioning of the city government in providing the public services which are necessary in an urban environment.

Article XX does not authorize the adoption of charters creating fiefdoms. A clear perspective of the role of home rule cities in Colorado was established by the Colorado Supreme Court in *Denver v. Sweet*, 138 Colo. 41, 329 P.2d 441, 444–45 (1958) where the power to enact an income tax was denied. The challenge to the city came from citizens and electors and the following three paragraphs from the Court's opinion seem particularly pertinent to the case at bar:

> Colorado is one of those states of the Union which has constitutional provisions relating to home rule cities. We know of no state with any broader provisions than ours. By Article XX the people in their sovereign capacity created a new agency of government. They vested it with some of the powers previously exclusively reposed in the general assembly. But this grant of power to municipal corporations did not give them authority to legislate on other than their express or reasonably implied fields of local concern. Their power is only a delegated one. This is different from the general assembly which by authority of the sovereign people may legislate upon any subject it desires except as limited by the federal

and state constitutions. (Citation omitted.)

\* \* \* \* \* \*

The United States Constitution provides for a national government with a federal system of *states.* All powers not expressly granted the federal government are reserved to the *states or to the people.* (Citation omitted.) Colorado's Enabling Act, approved by the federal government when we acquired statehood, insured that our state will have a republican form of government. (Citation omitted.) Clearly our federal system does not envisage as a part thereof city-states. It therefore follows that home rule cities can be only an arm or branch of the state with delegated power. That is the kind of power granted by Article XX.

This court has long recognized that even in fields of local and municipal matters the authority granted to home rule cities by Article XX may be taken away by subsequent amendments to the constitution. (Citations omitted.) Thus, what once was a matter of local or local and state-wide concern may by constitutional amendment become a matter solely of state-wide concern. We recognize that the people have not surrendered their right to amend the constitution in any manner in which they see fit, and such amendments are always valid unless repugnant to the Constitution of the United States. (Citation omitted.)

In construing § 1–45–116, it is necessary to draw a distinction between the concerns which may motivate those holding public office to speak out as community leaders, and the concerns which are directly involved in questions which come before them for an official decision. That difference can become clear by asking a disjunctive question about the objective of those in authority in using public funds to publicize their position on an issue. Are they seeking to influence the thinking of their fellow citizens on a question in which they share a common concern or is it an effort to inform the electorate in asking for approval, affirmation, or ratification of some official action?

In this case it is clear that the defendants sought to obtain a negative vote on a question which went well beyond anything they could decide in their representative roles. None of the governmental entities which are defendants in this case has the power to present a constitutional amendment to the Colorado electorate. Such a proposal can be made only by a referendum from the state legislature or on the initiative of the people through the petition process. The content of the state constitution is within the direct control of the people of Colorado and only they can be considered to have an official concern about changing it. It is the people who are the principal in the agency relationship which is the root of the republican form of government. Those who have a temporary hold on delegated power have no official concern in retaining it. Therefore they have no authority to use public resources to urge rejection of a people's petition.

The defendants' argument that their actions were authorized by the Campaign Reform Act requires acceptance of not only a legislative intent but also the constitutional power to interfere with the right of the people to restrict the authority of those who govern them.

Reading § 1–45–116 in the manner urged by the defendants would place primary power in the state legislature rather than with the people, in contradiction of the Colorado Constitution. It would also infringe upon those individual freedoms which are protected by the First Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment. Indeed, the invocation of those protections gives this court jurisdiction in this matter under 28 U.S.C. § 1343 to construct a remedy under 42 U.S.C. § 1983. Since the federal question claim is substantial, there clearly is pendent jurisdiction to consider the state claim that the defendants were acting ultra vires. *Mendoza v. K-Mart, Inc.,* 587 F.2d 1052, 1056 (10th Cir. 1978).

It is this court's responsibility to give state statutes a construction which will be

consistent with the limitations and protections of the United States Constitution and the Colorado Constitution. That is what I have done in interpreting the Colorado Campaign Reform Act of 1974 as prohibiting the contributions made by the defendants in this case.

The inescapable conclusion is that the defendants have acted in excess of the authority which they have under Colorado law and it is, therefore, not necessary to rule on the constitutional questions presented here. Likewise, it is not now necessary to discuss whether state law or the federal Constitution requires that public resources must be used only in a manner which gives a fair and balanced presentation of information relevant to the public issue. See *Mountain States Legal Foundation v. Denver School District No. 1; supra,* at 360.

In the amended complaint filed by the plaintiff in intervention, it is claimed that the use of school children to carry campaign literature home to influence their parents' vote is unconstitutional and ultra vires. That question appears to be a matter of first impression with many perplexing ramifications. An appropriate resolution of this separate issue would require an extensive inquiry into the facts and laws surrounding the relationship among parents, pupils, teachers, administrator and school boards. Aspects of academic freedom may be involved and nothing more than declaratory relief has been claimed. These complications are sufficient to preclude consideration of this question in such a generalized form as presented by the amended complaint of the intervening plaintiff in this case. There is no allegation of any specific impact upon any of the persons represented in this case. Accordingly, there is an inadequate showing of standing to raise these issues and no decision can be made on this matter in this case.

At the hearing on the motion for summary judgment, the plaintiffs agreed to withdraw their claims for compensatory and punitive damages; thereby enabling this court to proceed under Rule 56 of the Federal Rules of Civil Procedure by avoiding any factual disputes concerning the knowledge and intent of the individual defendants as well as the measure of damages. The defendants agreed that there were no issues of material facts with the damage claims withdrawn.

It was also agreed that reimbursement of the public funds could be required and that would seem to be the appropriate equitable remedy. The manner in which reimbursement is to be made is a matter which most appropriately can and should be determined by the present governing officials of the defendant school districts and city. They should be free to consider the options of seeking donations to restore these funds, pursuing collection from those officials who authorized the expenditures, or any other appropriate means of reimbursement. Unfortunately, the conclusion of this case has been long delayed and I do not believe it to be in the public interest to create any additional delay by continuing jurisdiction for the purpose of deciding upon the method of reimbursement. It is time for the entry of a final order which can be appealed.

Upon the foregoing, it is

ORDERED that the motion for summary judgment filed by the plaintiffs and plaintiff in intervention is granted and the Clerk of this court shall forthwith enter a judgment declaring that the contributions and contributions in kind made by the defendant school districts and city were unauthorized expenditures of public funds under Colorado law and directing the governing officials of those school districts and city to obtain reimbursement of those expenditures for their respective treasuries.