In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO the CAMPAIGN AND POLITICAL FINANCE INITIATIVE ADOPTED ON FEBRUARY 12, 1992, and Petition for Rehearing Denied in Part on February 28, 1992.

James L. Brandon, Petitioner,

and

Eric Perryman, Virginia L. Dennis, Eric W. Boyer, Robert D. Shellenberger, and Charles G. Michaels, Respondents,

and

Natalie Meyer, Douglas G. Brown, and Raymond Slaughter, Title Setting Board.

No. 92SA99.

Supreme Court of Colorado, En Banc.

May 26, 1992.

Berry & Singer, John Berry and Kent L. Singer, Denver, for petitioner.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Denver, for respondents.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Maurice G. Knaizer, Deputy Atty. Gen., for Title Setting Bd.

PER CURIAM.

The petitioner, James L. Brandon (Brandon), a registered elector of the State of Colorado, challenges the title, ballot title and submission clause, and summary prepared by the Title Setting Board (the Board) for a proposed constitutional amendment concerning campaign and political finance pursuant to section 1–40–102(3)(a), 1B C.R.S. (1991 Supp.). The respondents in this case are the proponents of the initiative and the Board. The proposed constitutional amendment is provided in appendix 1. The Board's proposed title, ballot title and submission clause, and summary is provided in appendix 2.

The Board is vested with considerable discretion in setting the title, ballot title and submission clause, and summary. *See In re Initiative Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports*, 826 P.2d 1241, 1245 (Colo. 1992). "[I]n reviewing actions of the board we will give great deference to the board's broad discretion in the exercise of its drafting authority." *In re Initiative Concerning State Personnel System*, 691 P.2d 1121, 1125 (Colo.1984). Only when language used by the Board is clearly misleading "should its action be set aside as invalid." *See In re Limited Gaming*, 826 P.2d at 1245. Otherwise, we will not interfere with the Board's choice of language.

Guided by these principles, we affirm the Board's ruling without opinion, pursuant to C.A.R. 35(e) (any judgment may be affirmed without opinion).

APPENDIX 1

PETITION TO INITIATE

To: The Honorable Natalie Meyer, Secretary of the State of Colorado

We the undersigned, registered voters of the State of Colorado, do hereby respectfully order and demand that; The following proposed AMENDMENT TO THE COLORADO CONSTITUTION shall be submitted to the legal voters of the state for their adoption or rejection at the polls at the next general election to be held on Tuesday, the third day of November, 1992, and each of the signers hereto says:

I sign this petition in my own proper person only, I am a registered voter of the State of Colorado, my residence address and the date of my signing this petition are correctly written immediately after my name, and I do hereby designate the following persons to represent me in all matters affecting this petition:

Eric Perryman, 1111 Gaylord Street, Denver, Colorado 80206 (303) 861–7670

Virginia L. Dennis, 1530 Whippoorwill Drive, Lakewood, Colorado 80215 (303) 237–1448

Eric W. Boyer, 13890 East Marina Drive # 101, Aurora, Colorado 80014

Robert D. Shellenberger, 20627 Catclaw Court, Johnstown, Colorado 80534

Charles G. Michaels, 1265 Race Street, # 204, Denver, Colorado 80203

The title as designated and fixed by the Board is as follows:

RECEIVED
JAN. 20 1992
ELECTIONS/LICENSING
SECRETARY OF STATE·

Be It Enacted by the People of the State of Colorado:

## ARTICLE XXVII

## CAMPAIGN AND POLITICAL FINANCE

**Section 1. Definitions.** "Candidate committee" means a person or persons with the common purpose of receiving contributions and making expenditures on behalf of a person, or candidate, running for public office.

"Commission" means the campaign and political finance commission.

"Contribution" means a gift, loan, pledge, or advance of money or a guarantee of a loan made to or for any candidate, candidate committee or political committee for the purpose of influencing the passage or defeat of any issue or the nomination, retention, election, or defeat of any candidate. "Contribution" includes a gift of money to or for any incumbent, or person holding public office, the purpose of which is to compensate the officeholder for public service or to help defray the officeholder's expenses incident thereto but which are not covered by official compensation; the payment of any money by any person, other than a political committee working on a candidate's behalf, for political services rendered to the candidate, candidate committee or political committee; any payment made to third parties at the request of or with the prior knowledge of a candidate, candidate committee, political committee, or agent of either; and any payment made after an election to meet any deficit or debt incurred during the course of the campaign. "Contribution" does not include services provided without compensation by individuals volunteering their time on behalf of a candidate or political committee. Any transfer of money between political committees is an expenditure by the political committee which dispenses the money and is a contribution to the political committee which receives the money.

"Election cycle" means the period of time beginning no earlier than the day after a general election for any elected office and ending on midnight of the next general election day for such office.

"Independent expenditure" means payment of money by a natural person or political committee for the purpose of advocating the election or defeat of a candidate or the approval or rejection of an issue, which expenditure is not controlled by, coordinated with, or made upon consultation with, any candidate for public office or political committee formed solely to seek passage or defeat of any issue, or agent of such candidate or committee.

"Political committee" means any person or persons, other than a single natural person, who makes or receives contributions or contributions in kind, or makes expenditures to support or oppose a candidate for public office or the passage or defeat of any issue at any election or making expenditures to support or oppose any political party or political organization.

"Political party" means any political organization which at the last preceding gubernatorial election was represented on the official ballot either by the organization's own candidates or by individual nominees only if votes cast for its gubernatorial candidate were at least ten percent of the total gubernatorial vote cast in the state at such election, or any person or persons, other than a single natural person, in any way affiliated with the political party at any level.

"Trust fund" means the election campaign financing trust fund.

**Section 2. Voluntary campaign spending limits.** (1) Any candidate for elected public office may certify to the commission that the following spending limits shall not be exceeded by the candidate or candidate's committee:

(a) Each candidate for governor shall not allow expenditures by the candidate or candidate's committee exceeding seven hundred and fifty thousand dollars for any primary or general election.

(b) Each candidate for lieutenant governor shall prohibit expenditures by the candidate or candidate's committee exceeding one hundred fifty thousand dollars for any primary election. The spending limit for candidates for the offices of governor and lieutenant governor on the same ticket in a general election shall not exceed the spending limit applicable for the office of governor.

(c) Each candidate for state-wide office, other than governor, shall prohibit expenditures by the candidate or candidate's committee exceeding one hundred fifty thousand dollars for any primary or general election.

(d) Each candidate for the senate of the general assembly, shall prohibit expenditures by the candidate or candidate's committee exceeding twenty five thousand dollars for any primary or general election.

(e) Each candidate for the house of representatives of the general assembly, shall prohibit expenditures by the candidate or candidate's committee exceeding seventeen thousand five hundred dollars for any primary or general election.

(f) Each candidate for district attorney shall prohibit expenditures by the candidate or candidate's committee exceeding forty cents per registered voter in the judicial district in which the candidate is running for office, or seventeen thousand five hundred dollars, whichever is greater, for any primary or general election.

(g) Each candidate for any other elected public office of the state of Colorado shall prohibit expenditures by the candidate or candidate's committee exceeding seventeen thousand five hundred dollars for any primary or general election.

(2) No later than sixty days subsequent to the end of any election, all candidates shall remit to the trust fund all campaign funds remaining from the prior election exceeding two thousand dollars.

**Section 3. Tax credits.** (1) Natural persons who contribute to candidates for elected public office who certify to the commission that the campaign spending limits shall not be exceeded by the candidate or candidate's candidate committee shall be entitled to a credit for purposes of such contributor's Colorado income tax not to exceed the lesser of the total contributed to all such candidates per calendar year or one hundred dollars if married filing jointly, or fifty dollars if filing under any other status. Such credit shall not be transferable to other taxpayers, taxes, tax years or give rise to a tax refund. Candidates who represent to the commission that the campaign spending limits shall not be exceeded by the candidate's candidate committee shall provide contributors who are natural persons with a written statement confirming such compliance on or prior to January 30th of the year following the receipt of the contribution. A copy of such statement shall be filed by the candidate with the Colorado department of revenue.

(2) Each candidate for each elective office who chooses to accept the voluntary spending limit applicable for such office without accepting a tax credit for contributors shall file an irrevocable statement to that effect with the commission no later than the date the candidate qualifies for elective public office.

(3) Any candidate who files a statement pursuant to section 3, (2) of this article and subsequently exceeds the voluntary spending limit shall pay to the trust fund as a penalty an amount equal to the excess expenditures. Such penalty shall not be an allowable campaign expense and shall be paid from personal funds other than campaign funds of the candidate.

(4) If a non-participating candidate exceeds the spending limit as described in this article, any opponent of such candi-

date, who has certified to the commission that the candidate accepts the applicable spending limit, may exceed the applicable spending limit without being subject to a penalty. In addition, the commission shall provide the participating candidate, within five days after a request by the participating candidate who has raised a threshold of twenty-five percent of the applicable spending limit in donations from natural persons, with public benefits from the trust fund equal to twenty-five percent of the maximum spending limit specified in section 2.

**Section 4. Contributions and independent expenditures.** (1) Candidates for the offices of governor and lieutenant governor on the same ticket of a political party shall be considered a single candidate for purposes of this section.

(2) No candidate committee shall receive aggregate contributions, other than from natural persons, exceeding twenty percent of the applicable spending limit as set forth in section 2 of this article in any election cycle.

(3) No candidate committee shall accept aggregate contributions from any one contributor, other than the candidate, exceeding five hundred dollars per election to statewide office candidates and five hundred dollars per election cycle to candidates for all other offices.

(4) No candidate committee shall accept aggregate contributions from any one minor dependent child exceeding fifty dollars per election cycle.

(5) No candidate committee for the office of governor, lieutenant governor, secretary of state, state treasurer, attorney general and members of the general assembly shall accept a contribution during the period beginning thirty days before and ending thirty days after any regular session of the general assembly or during any special session of the general assembly from any person registered as a lobbyist with the secretary of state.

(6) No person, except a candidate for public office contributing to the candidate's own authorized candidate committee, shall make contributions to any candidate committees and political committees including all political committees established and maintained by a national political party in any calendar year which, in the aggregate, exceed ten thousand dollars.

(7) No candidate committee may contribute to another candidate committee or to a political committee.

(8) No person or agent of a political committee, registered as a lobbyist with the secretary of state, shall promise or obligate a contribution to the elected officials specified in section 4(5) of this article or their candidate's committee during the period beginning thirty days before and ending thirty days after any regular session of the general assembly or during any special session of the general assembly.

(9) Every candidate, as a condition of having natural person contributors eligible to receive a tax credit for contributions, shall prohibit receipt by the candidate's candidate committee of amounts from the candidate's personal funds, or from the candidate's parents', siblings', spouse's or children's funds, exceeding five percent of the applicable spending limit for the office sought.

(10) A political party may contribute to or expend on behalf of its candidates, other than candidates for federal office, an aggregate sum not to exceed five hundred thousand dollars per election cycle.

(11) No political party shall accept any contributions which are conditioned upon or made for the purpose of the political party contributing those or other funds to one or more specific candidates.

(12) Any natural person or political committee making an independent expenditure in excess of five hundred dollars on behalf of or in opposition to a candidate shall deliver notice in writing of such independent expenditure, as well as the amount of such expenditure and a detailed description of the media type or use of such independent expenditure, within twenty four hours after obligating any funds for such independent expenditure. A notice of independent expenditure is required upon the purchase of any political advertising or the

entering into of any agreement, either oral or written, to purchase any political advertising. Such notice shall be delivered to all of the candidates in the affected race and the commission, by personal hand delivery. The notice shall specifically state the name of the candidate whom the independent expenditure is designed to support or oppose. Each additional independent expenditure shall require the delivery or filing of a new notice.

(13) Any written materials or other advertisements distributed, published, printed or broadcast in support of or in opposition to any specific candidate or issue by any natural person or political committee making an independent expenditure in excess of five hundred dollars shall identify every such natural person or political committee, and any authorized agent of each directly or indirectly responsible for providing at least ten percent of the cost thereof, as follows: In any written materials or other advertisement, in at least the same type size as the primary message, on the same side of the page as the primary message and as either the first sentence of a paragraph or as a separate paragraph; in oral advertisements, a clearly audible statement spoken at the same volume and at the same meter as the rest of the advertisement; in television advertisements, a clearly audible statement and a clearly visible image.

(14) A candidate who has certified to the commission acceptance of the applicable spending limit, in a race where an independent expenditure in excess of five hundred dollars is made in opposition to such candidate or on behalf of an opposing candidate, may exceed the applicable spending limit without being subject to a penalty. In addition, the commission shall provide the participating candidate, within five days after a request by the participating candidate who has raised a threshold of twenty-five percent of the applicable spending limit in donations from natural persons, with public benefits from the trust fund equal to twenty-five percent of the amount of the maximum spending limits specified in section 2 of this article.

**Section 5. Disclosure.** (1) All candidate committees, political committees and all contributors, other than natural persons, shall report to the commission the aggregate amount of contributions to each candidate from each contributor, including the occupation and place of business of each natural person who has contributed one hundred dollars or more. Such reports shall be filed bi-annually until six months prior to a general or special election, then on the twentieth day of every month to the date of the next general election and previously unreported contributions on the seventh day immediately preceding a primary, general or special election and such additional reports as required by statute.

(2) All contributors other than natural persons shall, before making any contributions, provide the commission a statement listing (i) the contributor's full name, spelling out any acronyms used therein, (ii) a natural person who is authorized to act as a registered agent, (iii) an address and telephone number for the principal place of operations of the contributor, (iv) affiliated candidates and/or political committees and, (v) the purpose or nature of interest of the contributing committee.

(3) Any person who makes an independent expenditure exceeding fifty dollars shall report to the commission the date, amount, and recipient of all expenditures as well as the date, amount and contributors of all contributions the person has received every month in which any contribution is received or any expenditure is made.

(4) All anonymous contributions and contributions not reported within sixty days after receipt shall be paid to the trust fund.

(5) Each candidate committee and political committee shall maintain no more than one savings account and one checking account.

**Section 6. Campaign and political finance commission created.** (1) There is hereby created a body corporate and a political subdivision of the state, a campaign and political finance commission ("commission"). The commission shall consist of

seven members, no more than four of which shall be of the same political party. All members of the commission shall be appointed by the governor with the consent of the senate. No member or employee of the commission shall:

(a) hold or be a candidate for any other public office while a member or employee of the commission or for one year thereafter;

(b) hold office in any political party or political committee;

(c) participate in or contribute to the political campaign of any candidate for a state public office;

(d) be an employee of or be directly responsible to the governor's office.

(2) The term of a commissioner shall be three years. No member shall serve on the commission for more than six consecutive years nor be appointed for more than two full terms.

(3) Each member shall hold office from the date of the member's appointment until the end of the term for which the member was appointed or until his or her successor qualifies for office. Any vacancy occurring on the commission shall be filled within ninety days by the original appointing authority. Of the original appointees, three shall have a two-year term and four shall have a three-year term.

(4) Members of the commission may be removed by the governor for good cause, including substantial neglect of duty, inability to discharge the powers and duties of office, violation of this article, gross misconduct or conviction of a felony.

(5) At its first meeting, the commission shall elect a chairperson. The chairperson shall serve as such until the end of the member's term as a commission member. The chairperson shall appoint, with approval of the majority of the full commission, a vice-chairperson and an executive director. The vice-chairperson shall act as chairperson in the absence of the chairperson or in the event of a vacancy in that position. The executive director shall be responsible for the administrative operation of the commission and shall perform such other tasks as the commission shall determine. The executive director shall appoint and discharge employees consistent with applicable state personnel system act and shall fix the compensation of employees and prescribe their duties. The meetings of the commission shall be subject to the provisions of the Colorado open public meetings law.

(6) The commission shall meet not less than quarterly. Four members of the commission shall constitute a quorum and a vote of a majority of the members present shall be required for any action or recommendation of the commission. The chairperson or any four members of the commission may call a meeting at any time provided that advance written notice is mailed to each member and public notice is made seventy-two hours prior to such meeting. Members of the commission shall be reimbursed on a per diem basis for actual attendance at meetings, hearing, and attending to any other necessary business of the commission at the rate of per diem reimbursement made to members of the general assembly. Members of the commission shall also be reimbursed for all reasonable actual and necessary expenses incurred. The commission shall report annually to the general assembly and the governor concerning the actions it has taken, the names and salaries and duties of all individuals in its employ, the money it has disbursed, and shall make such further reports on matters within its jurisdiction as necessary.

(7) The commission may subpoena witnesses, compel attendance and testimony, administer oaths and affirmations, take evidence, require by subpoena production of books, papers, records and other evidence necessary for the performance of its duties or exercise of its powers, including that of investigation.

The commission shall:

(a) Prescribe and publish rules and regulations to carry out the purposes of this article, including rules governing the conduct of proceedings hereunder;

(b) Prepare and publish, after giving the public an opportunity for comment,

forms for the statements and reports required to be filed by this article and to make such forms available to any and all persons required to file statements and reports hereunder;

(c) Make statements and reports filed with the commission available for public inspection and copying during regular office hours upon the request of any individual free of charge or at a charge not to exceed the actual material costs incurred in reproducing such statements and reports;

(d) Compile and maintain a computerized index of all reports and statements filed with the commission to facilitate public access to such reports and statements;

(e) Prepare and publish regular summaries of statements and reports filed with the commission.

(f) The spending limits, contribution limits and disclosure limits established in this article shall be adjusted biennially to reflect the rate of inflation as indicated in the consumer price index for all urban consumers for the Denver–Boulder area, all items, or successor reports as reported by the United States department of labor, bureau of labor statistics.

(g) The commission shall make available, within twenty-four hours after receipt, a copy of all reports received of contributions and expenditures for public inspection and copying, upon the request of any individual, free of charge or at a charge not to exceed the actual material costs incurred in reproducing such statements and reports.

(8) Persons subject to this article may make application in writing to the commission for an advisory opinion on whether an action or proposed action violates the law. The commission shall respond within thirty days by issuing an advisory opinion. All advisory opinions shall be published, provided that any material that may identify the subject of the opinion shall be deleted prior to publication, and the person not be identified. Individuals may rely upon published guidelines and Commission advisory opinions. Any person acting in good faith upon such reliance shall be immune from sanctions of this law, and have an absolute defense to any prosecution for such actions.

(9) The commission may promulgate such rules and utilize state hearing officers as it deems necessary for the performance of its duties, which include but are not limited to, the handling of investigations, complaints, dismissals, hearings, disposition and judicial review. The general assembly shall establish and publish a schedule of civil fines, which the commission shall impose, to encourage compliance with all provisions of this article.

(10) If the commission finds probable cause that a criminal violation has occurred, the commission shall refer the matter to the appropriate district attorney.

(11) The commission shall initiate an investigation within thirty days after receipt of a written, sworn complaint that a violation has occurred. Should the commission fail to act within thirty days after initiation of the investigation of a complaint any person may file an affidavit with the appropriate district attorney stating the name of any person who has violated any provisions of this article and stating the facts which constitute the alleged offense. Upon the filing of such affidavit, the district attorney shall forthwith investigate, and if reasonable grounds appear therefor, the district attorney shall prosecute the violator. The attorney general shall have equal power with the district attorneys to file and prosecute informations or complaints against any persons for violating any of the provisions of this article.

(12) Except as otherwise provided in this article the commission shall have original and exclusive jurisdiction over the provisions in this article.

(13) The commission is authorized to carry out the provisions of this article with appropriations to be made by the general assembly in an annual amount commensurate with the needs of the commission to fulfill its duties as prescribed in this article.

**Section 7. Establish the election campaign financing trust fund.** There is hereby established in the state treasury an elec-

tion campaign financing trust fund ("trust fund") to be utilized by the commission as provided in this article. The trust fund shall allow for receipt of voluntary contributions by methods promulgated by the commission. All moneys deposited in the trust fund shall remain inviolate for the purpose for which created, and no part thereof shall be transferred to any other fund, or used or appropriated for any other purpose.

**Section 8. Disallowance of deductibility for expenses incurred in lobbying state government.** For purposes of the income tax imposed by the state of Colorado, no person (as defined in section 24–6–301(1.7) and (4), Colorado revised statutes) or political committee shall be entitled to a tax deduction relating to expenses incurred by such person or political committee in lobbying any covered official (as defined in section 24–6–301(1.7) and (4), Colorado revised statutes) on any matter. The amount of collected Colorado income tax attributable to the inclusion of lobbying expenses in gross income shall be certified annually by the executive director of the Colorado department of revenue and paid over to the trust fund on or before October 1st of each year.

**Section 9. Assessment on contributions by political committees to candidate committees and political parties.** Each political committee shall pay a five percent assessment on all contributions, excluding in-kind contributions, made to any candidate committee or political party. The assessment shall be remitted to the commission at the time contribution disclosure reports are due. The commission shall transfer the assessment revenues to the trust fund on receipt.

**Section 10. Appropriation.** If necessary, each year in which a general election is to be held the general assembly shall appropriate to the trust fund from general revenue an amount sufficient to fund qualifying candidates pursuant to the provisions in this article.

**Section 11. Sanctions.** (1) It shall be a misdemeanor in the first degree for any person to knowingly violate, attempt or conspire to violate, or aid, abet or advise the violation of any requirement of this article.

(2) Any person who knowingly and willfully violates any of the provisions of section 4 of this article shall, in addition to any other sanctions, pay to the trust fund a sum equal to double the amount contributed, received or expended in violation of section 4.

(3) All civil fines imposed by the commission shall be paid into the state general fund.

(4) If any successful candidate for public office is adjudged guilty in a criminal action of violation of any requirement of this article:

(a) The court shall, after entering judgment, enter a supplemental judgment declaring a forfeiture of the candidate's right to office, or

(b) If a successful candidate for the legislature, the court shall, after entering judgment, certify its findings to the presiding officer of the house of the legislature to which the candidate was elected.

(5) No action shall be commenced more than five years after the occurrence of any prohibited action has occurred.

**Section 12. Severability.** If any provision of this article or the application in any particular case, is held invalid, the remainder of the article and its application in all other cases shall remain unimpaired.

**Section 13. Conflicting constitutional provisions declared inapplicable.** Anything in the constitution of this state in conflict or inconsistent with the provisions of this article is hereby declared to be inapplicable to the matters and things covered and provided for by this article.

**Section 14. Article self-executing.** This article is self-executing, but legislation may be enacted to facilitate its operations, but in no way limiting or restricting the provisions of this article, or the powers herein reserved.

## APPENDIX 2

### Proposed Initiative on "Campaign and Political Finance"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION TO PROVIDE VOLUNTARY SPENDING LIMITS AND MANDATORY LIMITS UPON MAKING AND RECEIPT OF CAMPAIGN CONTRIBUTIONS FROM SOURCES OTHER THAN THE CANDIDATE FOR STATE POLITICAL CAMPAIGNS, TO ENCOURAGE CANDIDATES TO ADOPT THE VOLUNTARY SPENDING LIMITS, TO CREATE A COMMISSION TO BE FUNDED BY THE LEGISLATURE TO OVERSEE POLITICAL FINANCE PRACTICES AND INVESTIGATE VIOLATIONS OF CAMPAIGN FINANCE LAW, AND TO ESTABLISH A TRUST FUND FOR PARTIAL PUBLIC FUNDING OF CERTAIN QUALIFYING CANDIDATES WHO ADOPT THE VOLUNTARY SPENDING LIMITS.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO PROVIDE VOLUNTARY SPENDING LIMITS AND MANDATORY LIMITS UPON MAKING AND RECEIPT OF CAMPAIGN CONTRIBUTIONS FROM SOURCES OTHER THAN THE CANDIDATE FOR STATE POLITICAL CAMPAIGNS, TO ENCOURAGE CANDIDATES TO ADOPT THE VOLUNTARY SPENDING LIMITS, TO CREATE A COMMISSION TO BE FUNDED BY THE LEGISLATURE TO OVERSEE POLITICAL FINANCE PRACTICES AND INVESTIGATE VIOLATIONS OF CAMPAIGN FINANCE LAW, AND TO ESTABLISH A TRUST FUND FOR PARTIAL PUBLIC FUNDING OF CERTAIN QUALIFYING CANDIDATES WHO ADOPT THE VOLUNTARY SPENDING LIMITS?

The summary as prepared by the Board is as follows:

This measure sets, and allows candidates to adopt, voluntary spending limits for campaigns for elected public offices of the state of Colorado. It gives Colorado income tax credits to certain contributors to candidates who have adopted these limits and certified they will not be exceeded. The measure creates a seven-member commission to oversee campaign and political finance, including issuing campaign finance reports, forms, rules and advisory opinions, handling complaints and investigations, and adjusting the campaign spending contribution and disclosure limits for inflation.

The measure also establishes an election campaign financing trust fund to provide partial funding for certain qualifying campaigns. It assesses political committees 5% of contributions to candidate committees and political parties for the fund and requires candidates after elections to remit to the fund any remaining campaign amounts over $2000. It disallows expenses for lobbying covered state officials as Colorado income tax deductions and requires the amount of collected tax from inclusion of lobbying expenses in gross income to be paid into the trust fund annually. Penalties for campaign spending violations are also paid into the trust fund, as are anonymous contributions and those not reported within 60 days. Provision is made for an appropriation to the fund from state revenues if the fund should be insufficient in any general election year.

The measure limits the campaign contributions a candidate committee may receive from all sources. Individuals are limited to donating $10,000 per year to all candidate committees and political committees. Candidates contributing to their own candidate committees are exempt from these limits, except that committees of candidates who have contributors eligible for tax credits may not receive more than 5% of the applicable spending limit for the office sought from the candidate or candidate's immediate family.

The measure prohibits contributions by lobbyists to campaigns for statewide office

or the general assembly from a period from 30 days before to 30 days after any regular legislative session and during any special session. It also prohibits contributions from a candidate committee to a political or candidate committee and acceptance of contributions by a political party if such contributions are conditioned on the party contributing to specific candidates.

Notice, including disclosure of sources in the case of written materials and advertisements, is required by this measure if independent expenditures (not coordinated with a candidate or political committee) in excess of $500 are made for or against a candidate or issue or are made for political advertising.

A candidate who has accepted the applicable spending limit for a campaign is permitted by this measure to exceed that limit if an opponent who has not accepted the limit exceeds it or if any independent expenditure over $500 is made against the candidate or on behalf of an opponent. If such a participating candidate has also raised at least 25% of the limit in donations from natural persons, the measure permits the candidate to receive from the campaign financing trust fund an amount equal to 25% of the applicable spending limit.

The measure allows a candidate to accept the applicable spending limit but not the tax credit for contributors. If such a candidate exceeds the limit, (s)he must pay from personal funds an amount equal to the excess expenditures.

The measure establishes campaign reporting and disclosure requirements for candidates, political committees and contributors other than individuals, and limits candidate and political committees to one checking and one savings account each. Criminal and civil enforcement sanctions are set forth in the measure, including forfeiture of office by successful candidates subsequently found guilty of criminal violation of its provisions.

It is estimated that, under the proposal, the state would incur significant costs in creating and operating the campaign and political finance commission and its sup-

porting staff as an independent agency of state government, and that the proposal would also create a potential fiscal impact of $1 to $3 million in general fund liability each election year to fund qualifying candidates from the trust fund established in the initiative. It is estimated that the proposal would have no fiscal impact on local government.

Adjourned 11:25 a.m.

Rehearing 2/28/92