IN THE MATTER OF THE TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–98 # 80:

Jerry G. PERCY, Petitioner,

v.

Edward EMBURY and Laura McCALL, Respondents,

and

Victoria Buckley, Rebecca Lennahan, and Richard Westfall, Title Setting Board.

No. 98SA232.

Supreme Court of Colorado, En Banc.

July 6, 1998.

Rehearing Denied Sept. 8, 1998.

Susan E. Birch, Denver, for Petitioner.

Edward Embury, Denver, Pro Se.

Laura McCall, Golden, Pro Se.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Setting Board.

PER CURIAM.

The petitioner, Jerry G. Percy, a registered elector of the State of Colorado, challenges the title, ballot title and submission clause, and summary prepared by the initiative title setting board (the Board) for a proposed initiative amendment to the Colorado Constitution concerning natural lands and open space preservation. The petitioner also argues that the Board should not have set the titles and summary because the initiative contains more than one subject. The respondents in this case are the proponents of the initiative, Edward Embury and Laura McCall.

The proposed initiative would prohibit local governments from approving the construction of new dwelling units or new commercial or industrial structures if such development would consume an amount of undeveloped land in excess of one percent of the developed land within the local government's jurisdiction. The text of the initiative along with the title, ballot title and submission clause, and summary are provided as an appendix to this opinion. We affirm the Board's ruling.

The Board is vested with considerable discretion in setting the title, ballot title and submission clause, and summary. *See In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports*, 826 P.2d 1241, 1245 (Colo.1992). Therefore, in reviewing actions of the Title Board, we must liberally construe the single-subject requirements for initiatives. *See In re Proposed Initiative 1996–17*, 920 P.2d 798, 802 (Colo. 1996). In reviewing determinations by the Board, we will not address the merits of the proposed initiative; instead, we give great deference to the Board's action in exercising its drafting authority. *In re Campaign and Political Finance Initiative*, 830 P.2d 954 (Colo.1992) (citing *In re Proposed Initiative Concerning "State Personnel System"*, 691 P.2d 1121, 1125 (Colo.1984). Our review of the Board's action is limited to whether the title, ballot title and submission clause, and summary fairly reflect the intent of the initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board. *In re Workers Comp Initiative*, 850 P.2d 144, 146 (Colo.1993). This court will "not interpret the meaning of the proposed language or suggest how it will be applied if adopted by the electorate." *In re Proposed Election Reform Amendment*, 852 P.2d 28, 31–32 (Colo.1993); *In re Workers Comp Initiative*, 850 P.2d at 146.

Guided by these well-established principles, and pursuant to our limited scope of review, we affirm the Board's ruling without opinion. C.A.R. 35(e) (any judgment may be affirmed without opinion); *In re Campaign and Political Finance Initiative*, 830 P.2d at 954; *In re Proposed Initiative for an Amendment Entitled "W.A.T.E.R. II"*, 831 P.2d 490, 491 (Colo.1992).

### APPENDIX A

### INITIATIVE

Be It Enacted by the People of the State of Colorado:

Article XVIII of the Constitution of the State of Colorado is amended by the addition of a new section 14 to read:

**Section 14. Colorado natural lands preservation.**

(1) Preservation of natural lands. This section 14 shall be implemented to conserve the beauty and character of the undeveloped natural lands and open spaces of Colorado for the present and future residents of the state. New construction within Colorado shall be planned so as to best conserve the state's natural expanses and the open spaces traditionally existing between developed areas. Therefore, it is the intent of this amendment to ensure the preservation of open space and natural lands in Colorado, according to the measures contained herein.

(2) On the day this section 14 takes effect, and except as provided for by the exceptions and exclusions contained herein, no county, city and county, or municipality shall approve, permit or otherwise allow the construction of new dwelling units or new commercial or industrial construction which, together with the land area required to site each building, consumes within any one year

an amount of undeveloped land which is greater than one percent of the developed land existing within the jurisdiction on the day this section 14 takes effect. The developed area within each jurisdiction, which shall serve as the base from the day this section 14 takes effect, shall only be increased or decreased through annexation.

(3) Definitions. As used in this section:

(a) "Affordable housing" means that monthly rents or monthly mortgage payments, including taxes, insurance, and utilities, do not exceed 30 percent of the median adjusted gross annual income for the household.

(b) "Developed land" includes:

(I) The minimum land area required by any zoning or other regulation to site each existing residential, commercial and industrial building or structure completed and certified for use and occupancy on the day this section 14 takes effect.

(II) The site occupied by existing structures previously certified for use or occupancy in disrepair and unsuitable for occupancy at the time of the approval of this section 14. Their repair and reuse shall be allowed and shall be included as part of the developed land within the jurisdiction.

(III) Land already dedicated as parks or open space or any developed parcels annexed to the jurisdiction on the day this section 14 takes effect.

(c) "Developed land" does not include:

(I) The land required to site the structures approved for construction and not yet built or any other new structures not completed and approved for use or occupancy on the day this section 14 takes effect.

(II) Any excess or surplus land within a parcel over and above the land required to site the structure that exists on the day this section 14 takes effect.

(III) The land occupied by any streets, roads, highways, or rights-of-way existing within each political subdivision on the day this section 14 takes effect.

(d) "Dwelling" means any building or portion thereof which is used as a private residence or sleeping place of one or more persons but not including hotels, motels, tourist courts, resort cabins, clubs, hospitals, or similar uses.

(e) "Dwelling unit" means a building or any portion of a building designed for occupancy as independent living quarters for one or more persons having direct access from the outside of the building or through a common hall and having living, sleeping, kitchen and sanitary facilities for the exclusive use of the occupants.

(f) "Excess land" means not enough additional land in a single parcel under existing zoning regulations to build another building and insufficient to permit subdivision of the parcel for the construction of another building or structure.

(g) "Historic properties" means the resources including buildings, structures, objects, sites, districts and land areas that are of historical significance.

(h) "Historical significance" means having importance in the history, architecture, archeology or culture of the United States, the state, or any political subdivision thereof.

(i) "Jurisdiction" means:

(I) The territorial range of authority or control of a governmental entity or political subdivision.

(II) The political subdivision which exercises authority or control within a particular territorial range or area.

(j) "Landmark" means:

(I) A building or site having historical significance and marked for preservation by a government entity or its designee.

(II) A prominent and identifying feature of a landscape.

(k) "Low-income housing" means that monthly rents and housing costs do not exceed 80 percent of the median annual adjusted gross income within the metropolitan statistical area or jurisdiction.

(l) "Natural land" means:

(I) Undeveloped, relatively undisturbed land or a remnant of an area's original natu-

ral landscape which may or may not be feasible for development and perhaps supporting significant ecological habitat or geological formations or possibly containing rare, threatened, or endangered species or habitat.

(II) A site adjacent to another protected natural resource that together would support a larger or more diverse natural habitat.

(m) "Open space" means all public and private lands not part of a developed parcel in their actual or approximate natural state, parks and recreation lands, greenbelt and agricultural buffer zones, scenic easements, floodplains, paths and trails, historic monuments, wild rivers, wilderness areas, wildlife habitats, and community open space lands.

(n) "Structure" means something constructed, especially a building or a related part thereof.

(o) "Surplus land" means enough additional land in a single parcel to build another building under existing zoning regulations.

(4) Exemptions.

(a) New dwelling units constructed for sale or rent as low-income or subsidized housing as defined by state or local statutes shall be exempt for so long as they are occupied or resold as low-income housing or maintained at rental rates deemed low income within the jurisdiction in which they are located. The controlling agency responsible for the administration of low-income housing within each jurisdiction or its designee shall determine the rates.

(b) To encourage the preservation of undeveloped land, areas dedicated as parks or open space following the day this section 14 takes effect shall not be counted as developed land within the one percent of newly-developed area.

(c) This section 14 shall preserve historic landmarks. Historic landmarks, as defined herein or by statute or ordinance, and the entirety of the site they occupy for so long as the site is preserved so as to maintain its essential character and condition, shall be included as developed land and shall be exempt from the limitations of this section 14.

(d) Any specific development proposal which would exceed the limitations of this section may be exempted by a vote of the registered electors of the controlling political subdivision where the proposal is to be sited. Any such authorizing vote shall be taken at a state general election, a biennial local district election, or on the first Tuesday in November of odd-numbered years. The language of the ballot question shall specify whether the land area of the proposed exemption shall or shall not apply against the one percent of future developed area allowed. The proponents seeking the exemption may be assessed the costs of their portion of the election by the jurisdiction where the vote takes place.

(e) Any political subdivision of the state or any other political entity may exempt itself from the requirements of this section 14 for an initial period of not more than four (4) years by an affirmative vote of the electors thereof at a state general election, a biennial local district election, or on the first Tuesday in November of any odd-numbered year.

(f) The voters may continue this exemption at any subsequent election other than a special election as specified above.

(5) Implementation. In order to determine the amount of developed land, each jurisdiction shall conduct a census of all existing buildings and structures existing within its boundaries within 120 days after the passage of this section 14.

(6) Projected commenced or issued building permits but not completed prior to the approval of this section 14 may proceed upon its passage. However, any amount of undeveloped land consumed by all such projects taken together, which is greater than one percent of the developed land within the jurisdiction as it exists on the date of the passage of this section 14 shall be identified by the jurisdiction. If any such land area exists, it shall be applied against the amount of undeveloped land which can be consumed by future construction within the jurisdiction in future years.

(7) Annexation. This amendment does not prohibit the process of annexation. Annexed land, whether developed or undeveloped, will be subject to the provisions of this section 14

and will be added to or subtracted from the land area within the jurisdiction party to the annexation.

(8) Severability. If any provision of this section or its application in any particular case, is held invalid, the remainder of the section and its application in all other cases, shall remain unimpaired.

*APPENDIX B*

**PROPOSED INITIATIVE**
**"1997–98 # 80"** [1]

The **title** as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING THE PRESERVATION OF NATURAL LANDS, AND, IN CONNECTION THEREWITH, PROHIBITING, WITH SPECIFIC EXEMPTIONS, ANY COUNTY, CITY AND COUNTY, OR MUNICIPALITY FROM APPROVING THE CONSTRUCTION OF NEW DWELLING UNITS, OR NEW COMMERCIAL OR INDUSTRIAL CONSTRUCTION IF SUCH DEVELOPMENT, ALONG WITH THE LAND AREA REQUIRED TO SITE EACH STRUCTURE, WOULD CONSUME AN AMOUNT OF UNDEVELOPED LAND IN EXCESS OF ONE PERCENT OF THE DEVELOPED LAND WITHIN THE JURISDICTION AS OF THE EFFECTIVE DATE OF THE AMENDMENT; EXEMPTING FROM THE PROVISIONS OF THE AMENDMENT LOW–INCOME OR SUBSIDIZED HOUSING, LAND THAT IS DEDICATED AS PARKS OR OPEN SPACE, HISTORIC LANDMARKS, AND VOTER–APPROVED DEVELOPMENTS; ALLOWING A POLITICAL SUBDIVISION TO EXEMPT ITSELF FROM THE PROVISIONS OF THE AMENDMENT FOR UP TO FOUR YEARS AT A TIME, UPON VOTER APPROVAL; REQUIRING EACH COUNTY, CITY AND COUNTY, AND MUNICIPALITY TO COMPLETE A CENSUS OF ALL EXISTING STRUCTURES WITHIN ITS BOUNDARIES FOR

PURPOSES OF DETERMINING THE AMOUNT OF DEVELOPED LAND WITHIN EACH JURISDICTION; ALLOWING PROJECTS COMMENCED OR ISSUED BUILDING PERMITS BUT NOT COMMENCED PRIOR TO THE AMENDMENT'S APPROVAL TO PROCEED, BUT REQUIRING A JURISDICTION TO APPLY ANY LAND AREA FROM SUCH DEVELOPMENTS THAT EXCEEDS THE ONE PERCENT CONSTRUCTION LIMITATION AGAINST FUTURE YEARS' CONSTRUCTION ALLOTMENTS; AND ALLOWING THE PROCESS OF ANNEXATION TO CONTINUE BUT MAKING ANNEXED LAND SUBJECT TO THE LIMITS SET FORTH IN THE AMENDMENT.

The **ballot title and submission clause** as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING THE PRESERVATION OF NATURAL LANDS, AND, IN CONNECTION THEREWITH, PROHIBITING, WITH SPECIFIC EXEMPTIONS, ANY COUNTY, CITY AND COUNTY, OR MUNICIPALITY FROM APPROVING THE CONSTRUCTION OF NEW DWELLING UNITS, OR NEW COMMERCIAL OR INDUSTRIAL CONSTRUCTION IF SUCH DEVELOPMENT, ALONG WITH THE LAND AREA REQUIRED TO SITE EACH STRUCTURE, WOULD CONSUME AN AMOUNT OF UNDEVELOPED LAND IN EXCESS OF ONE PERCENT OF THE DEVELOPED LAND WITHIN THE JURISDICTION AS OF THE EFFECTIVE DATE OF THE AMENDMENT; EXEMPTING FROM THE PROVISIONS OF THE AMENDMENT LOW–INCOME OR SUBSIDIZED HOUSING, LAND THAT IS DEDICATED AS PARKS OR OPEN SPACE, HISTORIC LANDMARKS, AND VOTER–APPROVED DEVELOPMENTS; ALLOWING A POLITICAL SUBDIVISION TO EXEMPT ITSELF FROM THE PROVISIONS OF THE AMENDMENT FOR UP TO FOUR YEARS AT A TIME,

1. Natural Lands and Open Spaces Preservation

UPON VOTER APPROVAL; REQUIRING EACH COUNTY, CITY AND COUNTY, AND MUNICIPALITY TO COMPLETE A CENSUS OF ALL EXISTING STRUCTURES WITHIN ITS BOUNDARIES FOR PURPOSES OF DETERMINING THE AMOUNT OF DEVELOPED LAND WITHIN EACH JURISDICTION; ALLOWING PROJECTS COMMENCED OR ISSUED BUILDING PERMITS BUT NOT COMMENCED PRIOR TO THE AMENDMENT'S APPROVAL TO PROCEED, BUT REQUIRING A JURISDICTION TO APPLY ANY LAND AREA FROM SUCH DEVELOPMENTS THAT EXCEEDS THE ONE PERCENT CONSTRUCTION LIMITATION AGAINST FUTURE YEARS' CONSTRUCTION ALLOTMENTS; AND ALLOWING THE PROCESS OF ANNEXATION TO CONTINUE BUT MAKING ANNEXED LAND SUBJECT TO THE LIMITS SET FORTH IN THE AMENDMENT?

The **summary** prepared by the Board is as follows:

This measure would prohibit any county, city and county, or municipality from approving the construction of new dwelling units or new commercial or industrial structures if such development and the land area required to site each structure consumes an amount of undeveloped land in excess of one percent of the developed land within the local government's jurisdiction, as it exists on the effective date of the amendment. The measure exempts the following types of developments from the amendment's construction limitation: low income or subsidized housing; land that is dedicated as parks or open space; historic landmarks; and voter-approved developments. The measure allows a local government, with voter approval, to exempt itself from the one percent construction limitation for up to four years at a time. Such exemption may be extended beyond the initial four year time period by subsequent voter approval. The measure requires each local government to determine the amount of developed land within its boundaries by completing a census of all existing structures existing therein within 120 days after passage of the proposal. It allows projects commenced or issued building permits but not commenced by the date the amendment is approved to proceed as planned, but requires a local government to apply any land area from such developments that exceeds the one percent construction limitation against its future years' construction allotments. The measure does not prohibit the process of annexation, but it does subject annexed land to the construction limitation.

This measure could result in negative fiscal impact on local governments that had built facilities with the expectation of higher revenues from a growing population. The required census of existing buildings and structures in each local government would also have a negative fiscal impact. There would also be a negative fiscal impact from expected litigation concerning a local government's authority under the measure to affect a property owner's vested property rights. There also may be positive impacts resulting from savings from the cost of growth that are avoided due to the measure. The amount of these fiscal impacts is indeterminate.

The measure's fiscal impact on the state is inconclusive due to the unpredictable nature of markets and economies.

Hearing adjourned, May 20, 1998, 4:40 p.m.

May 29, 1998

— Jerry G. Percy Motion for Hearing Granted in Part, Denied in Part.

Hearing adjourned, 3:52 p.m.