This opinion considers whether Article XXVIII of the Colorado Constitution, a provision concerning campaign and political finance, applies to these donations. This opinion is issued at the request of the Colorado Secretary of State.
 QUESTION PRESENTED AND CONCLUSION
Question: Under Art. XXVIII of the Colorado Constitution, does the term "contribution" include donations of money or property to, and used by, elected officials, including incumbents and candidates elected to public office, for the purpose of providing service to the public?
Answer: No. The language of Art. XXVIII of the Colorado Constitution is unambiguous.
It is intended to cover only donations or expenditures related to election activities.
The Colorado Sunshine Law requires elected officials to publicly disclose and report to the Secretary of State any money or gifts compensating them for their services or given to them to defray expenses related to their public service. Section 24-6-403, C.R.S. This provision is similar to federal election laws that require accounting and reporting of these contributions under 11 C.F.R. § 113.3 (2003).
The General Assembly might amend Colorado's Sunshine Law to require more frequent or timely reporting of contributions, or to place limits on size, source and total amount of such contributions.
 BACKGROUND
In 1974, the Colorado General Assembly enacted the Colorado Campaign Reform Act ("CRA"). The CRA specified the circumstances and manner in which candidates, persons and political committees were required to disclose contributions received and expenditures made for the purpose of supporting or opposing candidates. Colorado Common Cause v. Meyer,758 P.2d 153, 154 (Colo. 1988). The CRA remained a disclosure statute until 1996.
In 1996, Colorado voters passed the Fair Campaign Practices Act ("FCPA"). Among other things, the FCPA established contribution limits for statewide elections. By limiting the size of contributions to individual candidates, the voters intended to reduce, if not eliminate, the appearance of corruption in the election process. Citizens for Responsible Government v. Buckley, 60 F. Supp.2d 1066, 1088 (D.Colo. 1999), rev'd on other grounds, Citizens for Responsible Government v. Davidson, 236 F.3d 1174 (10th Cir. 2000).
In 2000, the General Assembly substantially amended the FCPA by increasing contribution limits and eliminating voluntary expenditure limits. HB00-1194, chap. 36, 2000 Colo. Sess. Laws 118. In 2002, in response to these changes, the voters passed Article XXVIII of the Colorado Constitution. Article XXVIII reimposes smaller contribution limits, reauthorizes voluntary expenditure limits, and introduces disclosure requirements for electioneering activities.
 LEGAL ANALYSIS
The inquiry in this opinion is whether the term "contribution" in Article XXVIII includes donations made to, and used by, elected officials solely for the purpose of providing public services in their roles as elected officials. When construing a constitutional amendment, effect must be given to the intent of the electorate adopting the amendment. Zaner v. City of Brighton, 917 P.2d 280, 283 (Colo. 1996). The language of the entire amendment must be examined, and the words must be given their plain and ordinary meaning. Id. When the language of the amendment is plain and no absurdity is involved, the provision will be interpreted accordingly. In re Great Outdoors Colorado Trust Fund, 913 P.2d 533, 538
(Colo. 1996). If the language is ambiguous, then general rules of construction will apply. Tivolini Teller House, Inc. v. Fagan,926 P.2d 1208, 1211 (Colo. 1996). Language is ambiguous if it is "reasonably susceptible to more than one interpretation." Zaner v. City of Brighton, supra. Article XXVIII includes several definitions which, taken together, help determine the amendment's scope. Colo. Const. art. XXVIII, § 2(5)(a) defines "contribution" as follows:
"Contribution" means:
 (I) The payment, loan, pledge, gift, or advance of money, or guarantee of a loan, made to any candidate committee, issue committee, political committee, small donor committee, or political party;
 (II) Any payment made to a third party for the benefit of any candidate committee, issue committee, political committee, small donor committee, or political party;
 (III) The fair market value of any gift or loan of property made to any candidate committee, issue committee, political committee, small donor committee or political party;
 (IV) Anything of value given, directly or indirectly, to a candidate for the purpose of promoting the candidate's nomination, retention, recall, or election.
A "`candidate committee' means a person, including the candidate, or persons with the common purpose of receiving contributions or making expenditures under the authority of a candidate. A contribution to a candidate shall be deemed a contribution to the candidate's candidate committee. . . . A candidate committee shall be open and active until affirmatively closed by the candidate or by action of the secretary of state." Colo. Const. art. XXVIII, § (3).
Article XXVIII, § (2) defines "candidate," in pertinent part, as follows:
 "Candidate" means any person who seeks nomination or election to any state or local public office that is to be voted on in this state. . . . A person is a candidate for election if the person has publicly announced an intention to seek election to public office. . .and thereafter has received a contribution or made an expenditure in support of the candidacy. A person remains a candidate for purposes of this article so long as the candidate maintains a registered candidate committee. A person who maintains a candidate committee after an election cycle, but who has not publicly announced an intention to seek public office in the next or any subsequent election cycle, is a candidate for purposes of this article.
An "`expenditure' means any purchase, payment, distribution, loan, advance, deposit, or gift of money by any person for the purpose of expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question." Colo. Const. art. XXVIII, § 2(8)(a). A "political committee" is an entity that has "accepted or made contributions or expenditures in excess of $200 to support or oppose the nomination or election of one or more candidates." Colo. Const. art. XXVIII, § 2(12)(a). An "electioneering communication" is a defined communication that is broadcast, printed, mailed, delivered, or distributed within thirty days before a primary election or sixty days before a general election. Colo. Const. art. XXVIII, § 2(7)(a). "Political party" is defined as "any group of registered electors who, by petition or assembly, nominate candidates for the official general election ballot." Colo. Const. art. XXVIII, §2(13).
The language of Article XXVIII is unambiguous. It is intended to cover only contributions or expenditures related to election activities. A candidate is a person who seeks nomination or election. A candidate committee is established for only one purpose:
 supporting the nomination or election of its candidate. Contributions are made either to a candidate committee, "for the purpose of promoting the candidate's nomination, retention, recall, or election," art. XXVIII, § 2(3), or to a candidate who is seeking nomination or election to office. Article XXVIII, § 2(5)(a)(iv). Political parties are people who band together for purposes of electing candidates to office.
Contributions under Article XXVIII are limited to money donated for purposes of nominating or electing people to office. A contribution made to an elected official for other purposes is not governed by Article XXVIII.
This interpretation of "contribution" is unremarkable. The United States Supreme Court has noted that it is generally understood that the term "contribution" is limited to the election context. Buckley v. Valeo, 424 U.S. 1, 24, n. 24 (1976). Moreover, the courts have long recognized that elected officials simultaneously may serve multiple separate roles that do not necessarily overlap or conflict. Elected officials can be both candidates and advocates for their constituents. United States v. Brewster, 408 U.S. 501, 512 (1972); see also, Colorado Union of Taxpayers v. Romer, 750 F. Supp. 1041, 1045 (D.Colo. 1990), appeal dismissed 963 F.2d 1394 (10th Cir. 1992) ("traditional perquisites are merely enlargements of the political personage which are not separable from the man in office"). Policy decisions made by elected officials may have political consequences; this fact does not mean that all policy decisions are related to the election or reelection of these officials. The proposition that official activities "lose their character as `official business,' whenever motivated by a purpose to please the electorate, is manifestly too broad to be accepted." Hoellen v. Annunzio, 468 F.2d 522, 526 (7th Cir. 1972).
Courts have generally recognized that contributions received by an elected official in his or her capacity as an elected official are not necessarily contributions to the official in his or her capacity as a candidate. Orloski v. Federal Election Commission, 795 F.2d 156 (D.C. Cir. 1986). In Orloski, a group organized by a congressman planned a picnic for senior citizens. Three corporations donated services or goods to the congressman to defray the costs of the picnic. The congressman, who had a poor record on senior citizen issues, made statements at the picnic designed to show his support for preserving Social Security. In addition, the congressman's picture was displayed at the picnic. An opponent filed a complaint with the Federal Election Commission in which he stated that the corporate donations violated federal election laws and regulations. The Federal Election Commission and the court rejected the complaint. Both concluded that the donations would not be deemed contributions unless someone at the event advocated the election or defeat of the congressman, or solicited or accepted money to support the congressman's election. Id. at 164.
In the context of the use of the franking privilege, the ability to use the mail free of charge, the courts have recognized the distinction between elected officials in their roles as public servants and in their roles as candidates. In Common Cause v. Bolger, 574 F. Supp. 672 (D.D.C. 1982), plaintiffs challenged the use of the federal franking privilege by incumbents. The plaintiffs argued that incumbents' use of the franking privilege gave them an unfair advantage in election races. The court rejected this argument, noting that "there is little doubt that the franking privilege is a valuable tool in facilitating the performance by individual Members of Congress of their constitutional duty to communicate with and inform their constituents on public matters." Id. at 677.
A division of the California Court of Appeals recently recognized the distinction between election-related and non-election-related activities. Californians For Political Reform v. Fair Political Practices Commission, 61 Cal.App.4th 472, 71 Cal.Rptr.2d 606 (1998). California voters passed an initiated measure limiting campaign contributions and spending. Under the measure, labor unions and corporations were allowed to make contributions to political committees established and sponsored by them. In addition to making contributions directly related to campaign activities, the sponsoring organizations could provide funds and in-kind services necessary to administer the political activities. The Fair Political Practices Commission concluded that funds donated solely for the purpose of administering political committees were not contributions. The Court of Appeals agreed. It concluded that the word "`contribution' is a term of art." Id., 61 Cal.App.4th at 485,71 Cal.Rptr.2d at 613. The court also found that the Commission's interpretation did not violate the voters' intent to minimize the potential for corruption caused by contributions. "The Commission could reasonably find that even lavish funding for overhead costs not directly related to political advocacy poses little or no danger of corrupting the political process and that the influences, if any, of such expenditures may have on the political process can be adequately monitored by keeping the public fully informed of their source." Id.,61 Cal.App.4th at 486-87, 71 Cal.Rptr.2d at 615.[1]
Chao v. North Jersey Area Local Postal Workers Union, AFL-CIO, 211 F. Supp.2d 543, 551 (D.N.J. 2002) (incumbent union officials must perform normal activities even when elections are ongoing).
The Federal Election Commission also distinguishes between funds contributed to a campaign and funds donated solely for the purpose of supporting the activities of the officeholder. Unlimited funds may be donated to an officeholder for the purpose of supporting the officeholder's official activities if the donations are deposited in an account pursuant to 11 C.F.R. § 103 (2003), or in an "account to which only funds donated to an individual to support his or her activities as a holder of federal office are deposited (including an office account)." 11 C.F.R. § 113.3(b) (2003).
Assuming that the language of the amendment is ambiguous, its statement of purpose provides guidance. Colorado Common Cause v. Meyer,758 P.2d at 162. By adopting article XXVIII, the voters found that "large campaign contributions create the potential for corruption and the appearance of corruption"; that "large campaign contributions made to influence election outcomes" allow certain groups to exercise disproportionate influence; that rising campaign costs prevent citizens from running for office; and that electioneering communications have frustrated the purposes of campaign finance laws. Colo. Const. art. XXVIII, § 1. The declaration is replete with references to the election process and totally devoid of statements regarding the activities of officeholders in their official capacities.
Insight to the meaning of an amendment can also be gained by reference to history.
The electorate is presumed to know existing law when it amends or clarifies the law.
Common Sense Alliance v. Davidson, 995 P.2d 748, 754 (Colo. 2000). Therefore, it is appropriate to interpret a newly-adopted constitutional provision "in the light and understanding of prior and existing laws and with reference to them." Carrara Place v. Board of Equalization,761 P.2d 197, 202 (Colo. 1988) (quoting Krutka v. Spinoza, 153 Colo. 115,124, 384 P.2d 928, 933 (1963)). Proponents of campaign finance reform first sought to place a campaign reform measure on the ballot in 1992. In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Campaign and Political Finance Initiative Adopted on February 12, 1992, 830 P.2d 954 (Colo. 1992). The definition of contribution in the 1992 proposal included "a gift of money to or for any incumbent, or person holding public office, the purpose of which is to compensate the officeholder for public service or to help defray the officeholder's expenses incident thereto but which are not covered by official compensation." Id. at 955.
In 1994, proponents offered another campaign reform initiative. In re Title, Ballot Title and Submission Clause, and Summary for a Petition on Campaign and Political Finance, 877 P.2d 311 (Colo. 1994). The definition of contribution also included gifts of money to incumbents or persons holding public office for their work as public officials. Id. at 316. The voters defeated this proposal.
In 1996, the proponents introduced a third proposal. The definition of contribution did not include money donated to incumbents or persons holding public office for their work as public officials. Section1-45-103(4), C.R.S. (1997). The definition of contribution was substantially the same as the definition of contribution in art. XXVIII.
The evolution of the definition of contributions in these proposals mirrors amendments adopted by the General Assembly. Prior to 1994, the definition of contribution included "a gift of money to or for any incumbent in public office from any person, the purpose of which is to compensate him for his public service or to help defray his expenses incident thereto but which are not covered by official compensation." Section 1-45-103(5), C.R.S. (1993). In 1994, the General Assembly amended the definition of contribution in the CRA to delete references to money paid to incumbents for the purpose of compensating them for their public service or to defray expenses related to their service. The General Assembly then added § 24-6-403, C.R.S. to the Colorado Sunshine Law. This section requires incumbents and elected candidates to report money or gifts made for such purposes by January 15th of each year.
Colorado law as it existed prior to the enactment of Article XXVIII recognized that public officials occupy three distinct roles in which they may receive gifts or remuneration. A different statute governed each role. Section 24-6-203, C.R.S. (2003) addressed gifts, honoraria and other benefits given in connection with the official's public service. This section specifically exempted contributions to candidates running for office. Section 24-6-203(4)(a), C.R.S. (2003). A public official may also be a candidate. In the role as a candidate, the elected official was subject to the FCPA. The distinction between an official as a candidate and an official as a public servant was recognized in § 1-45-109(3), C.R.S. (2003), which provides, "In addition to any other reporting requirements of this article, every incumbent in public office and every candidate elected to public office is subject to the reporting requirements of section 24-6-203." The Code of Ethics reinforced this distinction.
The Code of Ethics was intended to prevent undue influence of elected officials by limiting gifts that they could accept in their private capacities. The Code of Ethics specifically excluded campaign contributions. Section 24-18-104(3)(a), C.R.S. (2003). The provisions of the Code of Ethics "are distinct from and in addition to the reporting requirements of section 1-45-108, C.R.S. and section 24-6-203." Section24-18-104(4), C.R.S. (2003).
Article XXVIII does not alter these distinctions. It specifically repeals sections 1-45-103, 1-45-105.3, 1-45-107, 1-45-11 and 1-45-113. Colo. Const. art. XXVIII, § 12. However, it does not repeal any portion of the Sunshine Law or the Code of Ethics. Moreover, Article XXVIII is not inconsistent with the Sunshine Law or the Code of Ethics. Colo. Const. art. XXVIII, § 11. As noted, the law has recognized the distinction between elected officials as public servants and elected officials as candidates, and the proponents presumably were aware of these distinctions when they proposed the amendment.
Subsequent to the election, proponents have made statements that the term "contribution" covers donations or gifts made to elected officials for performance of their duties. However, post-election comments made by proponents cannot be considered. In re Submission of Interrogatories on S.B. 93-74, 852 P.2d 1, 8, n. 7 (Colo. 1993). Similarly, an amendment to the FCPA in 2003, which proposed to exempt "office accounts" from the definition of "contribution," cannot be considered because it was rejected. Failed amendments shed no light on previously enacted measures. Colorado Common Cause v. Meyer, 758 P.2d at 159.
During the course of legislative debate and rule-making concerning the scope of the Article XXVIII, proponents and legislators strongly argued that a reading of the plain language may allow incumbents to circumvent the constitutional provisions governing contribution limits. The Colorado Supreme Court, in discussing a potential gap in reporting requirements by issue committees under the FCPA, noted:
 As the State points out, a reading of the plain language of the statute may allow some organizations to slip past the disclosure requirements by forming for another purpose and then switching activities to focus on ballot questions. While this loophole in the statute may be troubling, it is one created by the drafting of the FCPA, and we are bound by the Act's plain language. This is a statutory problem that cannot be mended by judicial fiat. We, therefore, must resist the temptation to change the statutory language, and rather must leave any repair to the General Assembly or the electorate.
Common Sense Alliance v. Davidson, 995 P.2d at 755 (Colo. 2000). Likewise, public officers cannot interpret a constitutional provision in a manner that ignores the plain language and history of the provision.
The General Assembly or the electorate can fill any potential gap by amending existing laws governing contributions to office holders in connection with their service in those offices. As an example, amendments could require more frequent or timely reporting of contributions, as well as place limits on size, source and total amount of such contributions.
Or, the statutory definition of contribution could be expanded to include officeholders, as did the definition of contribution in prior law and prior versions of the FCPA. Moreover, the Secretary of State can promulgate rules "as may be necessary to administer and enforce any provision of this article." Colo. Const. art. XXVIII, § 9(1)(b). The Secretary may enact rules that prevent gifts made to persons in their elected capacity from being used to fund campaigns for elected office. Cf. 11 C.F.R. § 113.3.
 CONCLUSION
Colo. Const. art. XXVIII does not govern gifts or other things of value given to an elected official solely for the purpose of helping the elected official to provide a public service or to defray the costs of holding office. Instead, gifts or things of value given to an elected official must be reported and publicly disclosed annually under the Colorado Sunshine Law. Section 24-6-403, C.R.S.
Issued this 14th day of January, 2004.
KEN SALAZAR Colorado Attorney General
MAURICE G. KNAIZER Assistant Deputy Attorney General
State Services Section Office of the Attorney General
[1] This case is cited only for the proposition that not all activities undertaken by an elected official are necessarily related to an election campaign. It is not cited for the proposition that article XXVIII permits corporations or labor unions to give unlimited sums of money to their political committees or small donor committees for administrative purposes.