In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 235(a),

Jerry G. Percy, Petitioner,

v.

Edward Embury and Laura McCall, Respondents,

and

William Hobbs, Alan J. Gilbert and Charles W. Pike, Title Board.

No. 00SA148.

Supreme Court of Colorado, En Banc.

July 3, 2000.

Susan E. Burch, Denver, Colorado, Attorney for Petitioner.

Edward Embury, Pro Se, Laura McCall, Pro Se, Denver, Colorado.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, Attorneys for Title Board.

PER CURIAM.

■ In this original proceeding brought pursuant to section 1–40–107(2), 1 C.R.S. (1999), Petitioner, Jerry G. Percy, seeks review of the Initiative Title Setting Board's (Title Board or Board) April 5, 2000 action in fixing the title, ballot title and submission clause, and summary (titles) for a proposed ballot initiative designated "1999–2000 # 235(a)" (Initiative).[1] The Initiative proposes to amend Article XVIII of the Colorado Constitution by adding a new Section 13, titled "Colorado Natural Lands and Open Space Conservation." Because we conclude that the Initiative contains only one subject and the titles set by the Board are sufficiently clear and correct to express the subject of the Initiative, we affirm the action of the Title Board.[2]

## I. Facts and Procedural History

On March 3, 2000, Edward Embury and Laura McCall (Proponents) submitted a proposed initiative to the Title Board for the purpose of setting titles. On April 5, 2000, the Board fixed the titles for Initiative # 235(a). On April 12, 2000, Petitioner filed a motion for rehearing, alleging that the Initiative violated the constitutional single-subject and clear titles requirements. On April 19, 2000, the Board denied Petitioner's motion for rehearing. On April 24, 2000, Petitioner filed this petition for review with the court, asking us to find that the proposal contains more than one subject in violation of article V, section 1(5.5) of the Colorado Constitution, and the titles fixed by the Board do not clearly, accurately, and fairly express the

subject of the Initiative. We address these concerns in turn.

## II. Standard of Review

■ The Colorado Constitution reserves to the people the power to propose and enact amendments to the constitution. *See* Colo. Const. art. V, §§ 1(1) and (2). Article 40 of the Colorado Revised Statutes, spanning sections 1–40–101 to –134, 1 C.R.S. (1999), governs the initiative process in Colorado. The legislative intent of article 40 primarily is to make the initiative process fair and impartial. *See* § 1–40–101; *Montero v. Meyer,* 13 F.3d 1444, 1449 (10th Cir.1994). To that end, the General Assembly has assigned to the Title Board the duties of designating and fixing a title and submission clause for each proposed law or constitutional amendment. *See* § 1–40–106(1). In fixing such titles, the Board is charged with considering whether a proposal addresses incongruous subjects in the same measure and rejecting any proposals that do so. If the Board determines that the proposal touches on a single subject, the Board then prepares a clear and concise summary of the proposal. *See* § 1–40–106.5(1)(e)(II); *see also In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d 257, 260 (Colo.1999).

■ Upon review, we treat the actions of the Board as presumptively valid. *See In re Proposed Initiative for # 104,* 987 P.2d 249, 254 (Colo.1999); *Say v. Baker,* 137 Colo. 155, 159, 322 P.2d 317, 319 (1958). We will not address the merits of a proposed initiative, interpret its language, or predict its application. *See In re # 104,* 987 P.2d at 254.

## III. Single–Subject Requirement

■ The Board may not set the titles of a proposed initiative or submit it to the voters if it contains multiple subjects. *See* Colo. Const. art. V, § 1(5.5); *In re # 104,* 987 P.2d at 254. A proposed initiative violates the

---

1. The title, ballot title and submission clause, and summary of Initiative # 235(a) are attached hereto as an appendix.

2. We note that this court addressed a virtually identical proposed initiative in 1998, drafted by the same proponents. *See In re Proposed Initiative for 1997–98 # 80,* 961 P.2d 1120 (Colo.1998).

Because in that case we affirmed without an opinion, we do not treat that decision as precedent here. *See Terry v. State,* 467 So.2d 761, 765 (Fla.Dist.Ct.App.1985) ("A decision without opinion becomes the law of the case but it does not establish precedent as to any legal issues decided for purposes of application to other cases.")

single-subject requirement if it has "at least two distinct and separate purposes which are not dependent upon or connected with each other." *In re "Public Rights in Waters II."*, 898 P.2d 1076, 1078–79 (Colo.1995).

The stated purpose of Initiative # 235(a) is "to conserve the beauty and character of the undeveloped natural lands and open spaces of Colorado for the present and future residents of the state by regulating the rate and manner by which natural lands and open spaces within Colorado can be consumed by new construction or development each year." To this end, the Initiative: (1) employs a growth formula that limits the rate of future development; (2) delineates a system of measurement to determine the "base developed area" of each jurisdiction; (3) allows for alternative treatment of commenced but not completed projects; (4) excludes low-income housing, public parks and open space, and historic landmarks; and (5) establishes a procedure for exemptions.[3] Petitioner asserts that the Initiative contains seven distinct subjects beyond the conservation of Colorado's undeveloped land. We address these objections in turn.

## A. Regulation of Low–Income Housing

■ First, Petitioner asserts that the Initiative contains a directive to the agency responsible for the administration of low-income housing to determine the rates for such housing. Petitioner's contention arises from a subsection of the Initiative that excludes low-income housing from the amount of allowable new construction in a given year. This exclusion reads: "New dwelling units constructed . . . as low-income or affordable housing shall not be counted against allowable new construction for so long as they are occupied as such. The agency responsible for the administration of low-income and affordable housing within each jurisdiction or its designee shall determine the rates."

This second sentence is not a mandate to any particular agency that it must set rates for low-income housing; rather, the sentence clarifies that the Initiative is not itself seeking to set these rates. Instead, the Initiative

specifies that it defers to the agencies responsible for setting such rates to determine what qualifies as low-income and affordable housing. We note that the Colorado Revised Statutes contain numerous sections addressing the regulation of low-income housing. *See* § 29–4–229, 9 C.R.S. (1999) (authorizing city housing authority to provide low-income housing and set rental rates); § 29–4–506, 9 C.R.S. (1999) (directing county housing authority to provide housing to low-income families and set rental and payment rates accordingly). Thus, we reject Petitioner's contention that this subsection introduces an additional subject into the Initiative.

## B. Preservation of Historic Landmarks

■ Second, Petitioner asserts that subsection (7)(c) requires the preservation of historic landmarks. We conclude that the Initiative does not require the preservation of landmarks; rather, subsection (7)(c) indicates that the proposed Initiative is not meant to interfere with the preservation of landmarks. The language that "[landmarks] shall be included as part of the base developed area of those jurisdictions *for so long as* the site is preserved" clearly indicates that subsection (7)(c) does not compel the preservation. (Emphasis added.)

## C. Impact on Ballot Questions Regarding Annexation

■ Next, Petitioner alleges that subsection (8)(e) of the Initiative requires that any ballot question on annexation must "fully and fairly inform the voters of the actual content and effect of the exemption being sought," including annexations of both undeveloped and developed land. Thus, Petitioner concludes that the requirement, as it relates to developed land, is unrelated to the conservation of undeveloped land. We are not persuaded. Although subsection 8(e) begins with, "Any ballot question on annexation," this broad language is followed by limiting language that reads, "of natural land and open space of this section 13." This language indicates that the annexation require-

---

**3.** This description is not meant to serve as an exhaustive list of every provision contained in the

Initiative; rather, it provides a simplified explanation of the chief provisions of the Initiative.

ment applies only to these specific types of land. This reading is further supported by the remaining language of the subsection, which describes the information that must be circulated to voters as including: (1) "a description of the actual boundaries of the geographic area of the *natural land* and *open space* proposed to be annexed"; and (2) "the size of the area of *natural lands* and *open space* which will be consumed." Read as a whole, subsection 8(e) clearly applies only to annexations that impact undeveloped land.

### D. "Natural Lands" versus "Open Space"

■ Fourth, Petitioner argues that the concepts "natural lands" and "open space" are distinct and disparate terms that do not fit within the subject of the conservation of undeveloped land. The Initiative defines "natural land" as "undeveloped, relatively undisturbed land or a remnant of an area's original natural landscape which may or may not be feasible for development and perhaps supporting significant ecological habitat or geological formations." "Open space" is defined as "all public and private lands not part of the minimum land area required by zoning to site an existing building or use, in their actual or approximate natural state, parks and recreation lands, greenbelt and agricultural buffer zones, scenic easements, floodplains, paths and trails, historic monuments, wild rivers, wilderness areas, wildlife habitats, and community open space lands." While open space and natural lands may be distinct concepts, they share a common characteristic of being undeveloped for new construction or private development. The conservation of both open space and natural lands falls within the scope of preserving the beauty and character of Colorado's undeveloped lands. Accordingly, we find Petitioner's assertion to be without merit.

### E. "New Construction" versus "Development"

■ Next, Petitioner argues that the terms "new construction" and "development" are distinct concepts, with the former requiring a building permit and occurring at the later stage of development and the latter

beginning with the initial submission of a preliminary plan for approval. Petitioner is correct that these terms are different; however, Petitioner does not explain how this difference results in a violation of the single-subject requirement. Both new construction and development impact the conservation of natural lands and open space. Accordingly, these concepts both fall within the purpose of conserving the undeveloped natural lands and the open spaces of Colorado.

### F. Impact on Home–Rule Municipalities

■ Petitioner asserts that the proposal interferes with the powers of home-rule municipalities in areas that are not necessary to conserve undeveloped land. Petitioner argues that these provisions "unnecessarily interfere[ ] with the right of 'the people of all municipalities [to exercise] the full right of self-government in both local and municipal matters.' " (Quoting *In re # 104*, 987 P.2d at 256.)

First, Petitioner alleges that subsection (8)(b) states that a vote on exemptions to the growth limitations may be "initiated by any two or more citizens," and that this language changes the number and qualifications for those proposing initiatives, constituting a second subject. We disagree. Subsection (8)(b) clearly relates to exemptions from the provisions of the Initiative. Thus, the subsection does not touch upon the number and qualifications of those proposing initiatives that are not related to the conservation of undeveloped land. In addition, the subsection does not alter the minimum number of signatures necessary to qualify a measure for the ballot; rather, it states that at least two citizens must commence the process.

■ Petitioner also argues that this provision alters certain election dates that are within the exclusive control of home-rule municipalities. An election provision in a measure does not constitute a separate subject if there is a sufficient connection between the provision and the subject of the initiative. *See In re # 104*, 987 P.2d at 258. In this case, the election provisions directly relate to the conservation of undeveloped land. Although a home-rule city does have the authority to develop election procedures

for local and municipal matters, *see* Colo. Const. art. XX, § 6, issues involving state-wide concern are outside this authority. The Initiative, by its language, is applicable to the preservation of the undeveloped natural lands and open spaces of Colorado. The issue of whether the proposed elections would involve matters of statewide concern, local concern, or mixed state and local concern, would determine whether home-rule city election dates would govern. We cannot answer this question without extending our inquiry into the legal effect of the Initiative. For purposes of our limited review of the Title Board's actions, we conclude that votes taken pursuant to proposed section 13 do not automatically fall within the rubric of matters of municipal and local concern only. This court cannot determine the future application of an initiative in the process of reviewing the action of the Title Board in setting titles for a proposed initiative. *See In re Initiative 1999–2000 No. 200A,* 992 P.2d 27, 32 (Colo. 2000); *In re # 104,* 987 P.2d at 254.

### G. Conflicting Provisions

■■■ Petitioner alleges conflicting pro-visions within the Initiative make its effect unclear and that the Board must understand how the proposal works. In particular, Peti-tioner argues that the application contains two conflicting concepts: (1) when construc-tion or development may proceed on a "com-menced but not completed" project; and (2) the Initiative's applicability to local govern-ments. Both of Petitioner's arguments re-quire this court to determine the legal effect of the Initiative. We have consistently held that it is not the purview of this court to determine the efficacy, construction, or fu-ture application of an initiative in the process of reviewing the action of the Title Board in setting titles for a proposed initiative. Such matters are more appropriately addressed in a proper case if the voters approve the initia-tive. *See In re Initiative 1999–2000 No. 200A,* 992 P.2d at 32; *In re # 104,* 987 P.2d at 254.

### IV. Clear Titles Requirement

In setting the titles, the Board must "cor-rectly and fairly express the true intent and meaning" of the proposed initiative and must "consider the public confusion that might be caused by misleading titles." § 1–40–106(3)(b). We again note that the Board's actions are presumptively valid and this pre-sumption precludes this court from second-guessing every decision the Board makes in setting a title. *See In re # 104,* 987 P.2d at 254; *Baker,* 137 Colo. at 159, 322 P.2d at 319.

### A. "Base Developed Area"

■■ Petitioner presents two challenges to the clear titles requirement. First, he ar-gues that the term "base developed area" is inaccurate because, although this term may have a "common sense" meaning to the voter, the detailed definition of the term in the proposal requires the use of a different term that more accurately describes its meaning. Petitioner alleges that the use of this term fails to reflect various exclusions, such as roads, land in excess of the minimum lot size, and land required to site structures not yet built.

■■■ We do not agree that the Board's decision to not include within the titles a definition of "base developed area" or to not use a different term was erroneous. The definition provided in the Initiative accurate-ly reflects the "common sense" meaning of the term. The fact that the definition in-cludes some particular exceptions does not render the term "base developed area" mis-leading or confusing. In addition, the Board is not required to include every aspect of a proposal in the title and submission clause or provide specific explanations of the measure. *See In re Petition on Campaign and Politi-cal Finance,* 877 P.2d 311, 313 (Colo.1994). The task of the Title Board is to provide a concise summary of a proposed initiative, focusing on the most critical aspects of the proposal, not simply to restate all of the provisions of the proposed initiative. Ac-cordingly, we reject this contention.

### B. Failure to Identify Annual Nature of Limitations

■ In addition, Petitioner challenges the Board's action in failing to identify in the titles that the growth limitations on expand-ing into undeveloped land are annual. Peti-

tioner asserts that the annual nature of the limitations is critical to the proposal and to exclude it from the titles is in error.

However, we note that the title states that a local government is prohibited from approving new construction or development upon natural lands or open space that would expand the base developed area "by an *annual* percentage rate exceeding the rate of population growth in the United States." (Emphasis added.) Similarly, the ballot title and submission clause includes the same "by an *annual* percentage rate" language. (Emphasis added.) This language clearly indicates that the growth limitations are subject to an annual percentage rate. We accordingly reject this contention.

### V. Conclusion

Any remaining arguments raised by Petitioner are without merit. Accordingly, we affirm the action of the Title Board in setting titles for Initiative # 235(a) because the Initiative contains only one subject and the titles set by the Board clearly and correctly express the subject of the Initiative.

*APPENDIX*

**Proposed Initiative "1999–2000 # 235(a)"[1]**

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE CONSERVATION OF UNDEVELOPED AREAS IN THE STATE, AND IN CONNECTION THEREWITH, PROHIBITING A LOCAL GOVERNMENT FROM APPROVING A NEW CONSTRUCTION OR DEVELOPMENT UPON AN AMOUNT OF NATURAL LANDS OR OPEN SPACE THAT WOULD EXPAND THE BASE DEVELOPED AREA OF THE LOCAL GOVERNMENT BY AN ANNUAL PERCENTAGE RATE EXCEEDING THE RATE OF POPULATION GROWTH IN THE UNITED STATES, SPECIFYING WHAT AREAS AND PROJECTS WOULD BE INCLUDED IN OR EXCLUDED FROM A LOCAL GOVERNMENT'S BASE DEVELOPED AREA, SPECIFYING WHAT AREAS AND PROJECTS WOULD CONSTITUTE NEW CONSTRUCTION OR DEVELOPMENT, ALLOWING THE VOTERS WITHIN THE BOUNDARIES OF A LOCAL GOVERNMENT TO APPROVE EXEMPTIONS FROM THE LIMITATION ON NEW CONSTRUCTION OR DEVELOPMENT FOR A PERIOD OF UP TO FOUR YEARS, AND REQUIRING EACH LOCAL GOVERNMENT IN THE STATE THAT IS EMPOWERED TO AUTHORIZE NEW CONSTRUCTION OR DEVELOPMENT TO COMPLETE A CENSUS OF ALL EXISTING BUILDINGS AND STRUCTURES CERTIFIED OR PREVIOUSLY CERTIFIED FOR USE AND OCCUPANCY.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE CONSERVATION OF UNDEVELOPED AREAS IN THE STATE, AND IN CONNECTION THEREWITH, PROHIBITING A LOCAL GOVERNMENT FROM APPROVING NEW CONSTRUCTION OR DEVELOPMENT UPON ANY AMOUNT OF NATURAL LANDS OR OPEN SPACE THAT WOULD EXPAND THE BASE DEVELOPED AREA OF THE LOCAL GOVERNMENT BY AN ANNUAL PERCENTAGE RATE EXCEEDING THE RATE OF POPULATION GROWTH IN THE UNITED STATES, SPECIFYING WHAT AREAS AND PROJECTS WOULD BE INCLUDED IN OR EXCLUDED FROM A LOCAL GOVERNMENT'S BASE DEVELOPED AREA, SPECIFYING WHAT AREAS AND PROJECTS WOULD CONSTITUTE NEW CONSTRUCTION OR DEVELOPMENT, ALLOWING THE VOTERS WITHIN THE BOUNDARIES OF A LOCAL GOVERNMENT TO APPROVE EXEMPTIONS FROM THE LIMITATION ON NEW CONSTRUCTION OR DEVELOPMENT FOR A PERIOD OF UP TO FOUR YEARS, AND REQUIRING EACH LOCAL GOVERNMENT IN THE STATE THAT IS EM-

---

**1.** Natural Lands and Open Space Conservation Act

POWERED TO AUTHORIZE NEW CONSTRUCTION OR DEVELOPMENT TO COMPLETE A CENSUS OF ALL EXISTING BUILDINGS AND STRUCTURES CERTIFIED OR PREVIOUSLY CERTIFIED FOR USE AND OCCUPANCY?

The summary prepared by the Board is as follows:

This measure adds a new section 13 to article XVIII of the state constitution. The new section would prohibit, with specified exceptions, a county, city and county, municipality, or other political subdivision or entity that authorizes construction from approving new construction or development upon any amount of natural lands or open space that would expand the base developed area of the county, city and county, municipality, or political subdivision by an annual percentage rate exceeding the annual percentage rate of population growth in the United States as most recently reported by the United States bureau of the census.

The measure states that the base developed area shall be the total of the minimum land area required by zoning or other regulations to site all of the existing buildings or structures within each jurisdiction. The base developed area serves as the land area by which the amount of natural lands or open space allowed to be used for new construction or development each year is calculated. The size of the base developed area is determined as of the date the measure is approved. The size of the base developed area shall only be increased or decreased by annexation and shall not be expanded by new construction or development occurring after the measure is approved by the voters.

Land required by zoning, or the entirety of unzoned parcels, for siting all new structures, schools and other public facilities shall be deemed to be land area consumed by new construction or development.

Projects commenced or issued building permits but not completed prior to the date the amendment is approved by voters may proceed. Unless exempted by the voters, any amount of natural land and open space consumed by all such projects that exceeds the amount permitted by the amendment shall be applied against the natural land and open space that can be consumed by new construction or development within each jurisdiction in future years.

The measure provides that it is to be implemented to conserve the character and beauty of undeveloped natural lands and open spaces by regulating the rate by and manner in which these lands and open spaces can be consumed by new construction or development each year. The measure specifies that it is not intended to limit construction or development activity within the existing base developed area of any jurisdiction.

The measure excludes low-income housing, affordable housing, and land dedicated for parks or open space within newly developed areas from being counted as new construction or development annually. Historic landmarks are to be included as part of the base developed land area.

The measure allows the voters of a political subdivision that is empowered to authorize new construction or development to approve a general or specific exemption from the limitation on new construction or development for a period of up to four years. It allows the voters to renew, modify, suspend, or terminate the exemption. The measure specifies the election at which a proposed exemption may be submitted for voter approval. At least 60 days prior to the election, the measure requires the governmental body of the jurisdiction in which the exemption is sought to promulgate and circulate specific information on the content and effect of the exemption.

Within 180 days after the passage of the amendment, requires each political subdivision or entity empowered to authorize new construction or development to complete a census of all existing buildings and structures certified or previously certified for use and occupancy.

Specifies that the amendment does not prohibit the process of annexation and that any part of any base developed land area that is annexed will be added to or subtracted from the jurisdictions party to the annexation.

The measure defines "base developed area" to include the following:

- The minimum land area required by any zoning or other regulation to site each existing building or structure certified or previously certified for use and occupancy on the date the amendment is approved by the voters.
- The site occupied by existing structures previously certified for use or occupancy that are in disrepair and unsuitable for occupancy at the time the amendment takes effect.
- Land dedicated as parks or open space on or before the date the amendment takes effect.
- Any part of a base developed area annexed to the jurisdiction.

The measure excludes the following from the definition of "developed land":

- The land required to site structures approved for construction and not yet built or any other structures not completed and approved for use or occupancy on the date the amendment is approved by the voters.
- Any excess or surplus land within a parcel over and above the land required to site all structures that exist on the date the amendment is approved by the voters.
- The land occupied by any streets, roads, highways, or other rights-of-way existing within each political subdivision on the date the amendment is approved by the voters.
- The part of any base developed area that is annexed to another jurisdiction.

*State impacts.* The measure would not cause an apparent direct fiscal impact to the state. However, the measure may result in an indirect impact to the state which most likely could be absorbed within the existing budgets of affected agencies.

These indirect fiscal impacts may include: indeterminable associated costs resulting from the need for implementing legislation; an increased demand for consulting or training services from the department of local affairs; and unforeseen additional costs generated by requests from local governments for financial or other assistance to manage the impact of the measure.

*Local impacts.* The measure would have an indeterminate positive or negative fiscal impact on local governments. There could be a negative impact on those local governments that would have realized revenue growth from increased population growth that may be curtailed by the measure. For example, this impact could be felt by those jurisdictions that were expecting higher growth and had built facilities in anticipation of such growth. The measure thus could result in a loss of tap fee and operating revenues for a jurisdiction that had constructed a sewer treatment facility of sufficient size to accommodate a larger population. On the other hand, the measure could have a positive impact on local governments by eliminating the need to construct new infrastructure and facilities.

There will also be a negative fiscal impact on local governments resulting from the requirement of the measure that jurisdictions conduct a census of all existing buildings and structures within 180 days of the passage of the measure and the requirement that jurisdictions itemize the costs and impacts of proposed development. In addition, there may be costs associated with legal actions that may be brought to challenge a jurisdiction's exercise of authority under the measure in relation to an individual's property rights under various constitutional provisions.

Hearing April 5, 2000:

Single subject approved; staff draft amended, titles and summary set.

Hearing adjourned 4:28 p.m.

Hearing April 19, 2000:

Motion for Rehearing denied.

Hearing adjourned 7:00 p.m.

## COLORADO NATURAL LANDS AND OPEN SPACE CONSERVATION AMENDMENT

PROPONENTS: EDWARD EMBURY, 303–975–9336, LAURA MCCALL, 303–277–1819

DRAFT 3/03/00    P.O. BOX 19394, DENVER, CO 80219

BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO:

ARTICLE XVIII OF THE CONSTITUTION OF THE STATE OF COLORADO IS AMENDED BY THE ADDITION OF A NEW SECTION TO READ:

SECTION 13. COLORADO NATURAL LANDS AND OPEN SPACE CONSERVATION.

(1) THIS SECTION 13 SHALL BE IMPLEMENTED TO CONSERVE THE BEAUTY AND CHARACTER OF THE UNDEVELOPED NATURAL LANDS AND OPEN SPACES OF COLORADO FOR THE PRESENT AND FUTURE RESIDENTS OF THE STATE BY REGULATING THE RATE AND MANNER BY WHICH NATURAL LANDS AND OPEN SPACES WITHIN COLORADO CAN BE CONSUMED BY THE NEW CONSTRUCTION OR DEVELOPMENT EACH YEAR.

(2) THE INTENT OF THIS AMENDMENT IS TO ENSURE THE CONSERVATION OF OPEN SPACE AND NATURAL LANDS IN COLORADO AND NO PART OF THIS SECTION 13 SHALL OPERATE TO LIMIT CONSTRUCTION ACTIVITY WITHIN THE EXISTING BASE DEVELOPED AREA OF ANY JURISDICTION. ACCORDINGLY, NEW CONSTRUCTION OR DEVELOPMENT OUTSIDE OF ANY BASE DEVELOPED AREA SHALL PROCEED SO AS TO BEST CONSERVE THE STATE'S NATURAL LANDS AND OPEN SPACES.

(3) FROM THE DAY THIS SECTION 13 IS APPROVED BY THE VOTERS AND IN EACH YEAR THEREAFTER, AND EXCEPT AS PROVIDED FOR BY THE EXCLUSIONS AND EXEMPTIONS CONTAINED HEREIN, NO COUNTY, CITY AND COUNTY, OR MUNICIPALITY OR ANY OTHER POLITICAL SUBDIVISION OR ENTITY EMPOWERED TO AUTHORIZE NEW CONSTRUCTION OR DEVELOPMENT, SHALL APPROVE NEW CONSTRUCTION OR DEVELOPMENT UPON ANY AMOUNT OF NATURAL LANDS OR OPEN SPACE WHICH WOULD EXPAND ITS BASE DEVELOPED AREA BY AN ANNUAL PERCENTAGE RATE EXCEEDING THE ANNUAL PERCENTAGE RATE OF UNITED STATES POPULATION GROWTH AS MOST RECENTLY REPORTED BY THE UNITED STATES BUREAU OF THE CENSUS.

(4) THE SIZE OF THE EXISTING BASE DEVELOPED AREA OF EACH JURISDICTION UPON THE DATE THIS SECTION 13 IS APPROVED BY THE VOTERS SHALL BE DETERMINED ACCORDING TO THE MEASURES CONTAINED HEREIN AND SHALL SERVE AS THE LAND AREA BY WHICH THE AMOUNT OF NATURAL LANDS OR OPEN SPACE ALLOWED TO BE USED TO SITE NEW CONSTRUCTION OR DEVELOPMENT EACH YEAR IS CALCULATED. THE SIZE OF THE BASE DEVELOPED AREA WITHIN EACH JURISDICTION MAY BE INCREASED OR DECREASED BY ANNEXATION THROUGH THE TRANSFER OF ANY PORTION OF THE BASE DEVELOPED AREAS OF THE JURISDICTIONS PARTY TO THE ANNEXATION BUT SHALL NOT BE EXPANDED BY NEW CONSTRUCTION OR DEVELOPMENT OCCURRING AFTER THE DATE UPON WHICH THIS SECTION IS APPROVED BY THE VOTERS.

(5) THE LAND AREA CONSUMED BY NEW CONSTRUCTION OR DEVELOPMENT SHALL BE DEEMED TO INCLUDE THE LAND REQUIRED BY ZONING, OR THE ENTIRETY OF UNZONED PARCELS, FOR SITING ALL NEW STRUCTURES, SCHOOLS, AND OTHER PUBLIC FACILITIES.

(6) PROJECTS COMMENCED OR ISSUED BUILDING PERMITS BUT NOT COMPLETED PRIOR TO THE DATE THIS SECTION IS APPROVED BY THE VOTERS MAY PROCEED. ANY AMOUNT OF NATURAL LAND AND OPEN SPACE CONSUMED BY ALL SUCH PROJECTS WHICH EXCEEDS THE AMOUNT PERMITTED BY THE LIMITATIONS OF THIS SECTION 13

SHALL BE APPLIED AGAINST THE NATURAL LAND AND OPEN SPACE WHICH CAN BE CONSUMED BY NEW CONSTRUCTION OR DEVELOPMENT WITHIN EACH JURISDICTION IN THE YEARS THEREAFTER, UNLESS EXEMPTED BY THE VOTERS.

(7) EXCLUSIONS.

(A) NEW DWELLING UNITS CONSTRUCTED FOR SALE OR RENT AS LOW–INCOME OR AFFORDABLE HOUSING SHALL NOT BE COUNTED AGAINST ALLOWABLE NEW CONSTRUCTION FOR SO LONG AS THEY ARE OCCUPIED AS SUCH. THE AGENCY RESPONSIBLE FOR THE ADMINISTRATION OF LOW–INCOME AND AFFORDABLE HOUSING WITHIN EACH JURISDICTION OR ITS DESIGNEE SHALL DETERMINE THE RATES. IF HOUSING CONSTRUCTED UNDER THIS EXCLUSION IS CONVERTED TO MARKET RATES IT SHALL BE APPLIED AGAINST THE NEW CONSTRUCTION ALLOWED.

(B) TO ENCOURAGE THEIR PRESERVATION AND DEVELOPMENT, LAND DEDICATED AS PUBLIC PARKS OR OPEN SPACE FOLLOWING THE DAY THIS SECTION 13 TAKES EFFECT SHALL NOT BE COUNTED AS PART OF THE LAND ALLOWED TO BE CONSUMED BY NEW CONSTRUCTION OR DEVELOPMENT ANNUALLY.

(C) THIS SECTION 13 SHALL BE APPLIED SO AS TO PRESERVE HISTORIC LANDMARKS, AS DEFINED HEREIN OR BY STATUTE OR ORDINANCE. THE ENTIRETY OR ANY PORTIONS OF THE SITE THEY OCCUPY AS EXISTS WITHIN EACH JURISDICTION SHALL BE INCLUDED AS PART OF THE BASE DEVELOPED AREA OF THOSE JURISDICTIONS FOR SO LONG AS THE SITE IS PRESERVED AND MAINTAINED IN ITS ESSENTIAL HISTORIC CHARACTER AND CONDITION.

(8) EXEMPTIONS.

(A) UPON AN AUTHORIZING VOTE OF ITS ELECTORS, SUBJECT TO THE PROVISIONS HEREIN AND FOR UP TO FOUR YEARS AT A TIME, ANY POLITICAL SUBDIVISION OR ENTITY EMPOWERED TO AUTHORIZE NEW CONSTRUCTION OR DEVELOPMENT WITHIN ITS JURISDICTION MAYBE GRANTED A RENEWABLE EXEMPTION FROM THE LIMITATION OF THIS SECTION 13 UPON THE RATE AT WHICH NATURAL LAND AND OPEN SPACE WITHIN ITS JURISDICTION MAY BE CONSUMED ANNUALLY FOR NEW CONSTRUCTION OR DEVELOPMENT.

(B) A VOTE MAY BE TAKEN TO AUTHORIZE AN EXEMPTION, OR TO RENEW, MODIFY, EXTEND, OR TO SUSPEND OR TERMINATE AN EXISTING EXEMPTION, UPON A BALLOT QUESTION REFERRED BY THE GOVERNMENTAL BODY OF THE JURISDICTION OR INITIATED BY ANY TWO OR MORE CITIZENS THEREOF, ANY OTHER PROVISION OF THE CONSTITUTION OR LAWS OF COLORADO TO THE CONTRARY NOTWITHSTANDING.

(C) ANY SUCH VOTE SHALL BE TAKEN AT THE STATE GENERAL ELECTION, A BIENNIAL LOCAL DISTRICT ELECTION, OR ON THE FIRST TUESDAY IN NOVEMBER OF ODD–NUMBERED YEARS OR AT ANY OTHER REGULARLY SCHEDULED GENERAL OR MUNICIPAL ELECTION.

(D) ANY EXEMPTION GRANTED MAY APPLY OVER THE ENTIRE AREA OF THE JURISDICTION OR MAY BE TO AUTHORIZE A SPECIFIC DEVELOPMENT PROPOSAL WHICH BY ITSELF WOULD EXCEED THE LIMITATIONS OF THIS SECTION. PROPONENTS SEEKING AN EXEMPTION MAY BE ASSESSED THE COSTS OF THEIR PORTION OF THE ELECTION BY THE GOVERNMENTAL BODY OF THE JURISDICTION WHERE THE VOTE TAKES PLACE.

(E) ANY BALLOT QUESTION ON ANNEXATION, OR SEEKING AN EXEMPTION, OR TO RENEW, MODIFY OR EXTEND ANY PREVIOUSLY GRANTED EXEMPTION OF ANY JURISDICTION

FROM THE LIMITATIONS UPON THE CONSUMPTION OF NATURAL LAND AND OPEN SPACE OF THIS SECTION 13 MUST FULLY AND FAIRLY INFORM THE VOTERS OF THE ACTUAL CONTENT AND EFFECT OF THE EXEMPTION BEING SOUGHT. THE GOVERNMENTAL BODY OF THE JURISDICTION WHERE THE VOTE TAKES PLACE SHALL PROMULGATE AND CIRCULATE TO THE ELECTORS AT LEAST 60 DAYS PRIOR TO THE ELECTION, THE FOLLOWING ITEMS:

I. A DESCRIPTION OF THE ACTUAL BOUNDARIES OF THE GEOGRAPHIC AREA OF THE NATURAL LAND AND OPEN SPACE PROPOSED TO BE ANNEXED OR CONSUMED FOR NEW CONSTRUCTION OR DEVELOPMENT AND THE AMOUNT OF TIME OVER WHICH IT IS TO OCCUR, WHICH DESCRIPTION SHALL CORRESPOND TO A MAP DELINEATING THE BOUNDARIES.

II. THE SIZE OF THE AREA OF NATURAL LANDS AND OPEN SPACE WHICH WILL BE CONSUMED BY NEW CONSTRUCTION OR DEVELOPMENT WHICH SHALL BE EXPRESSED AS AN ACTUAL AMOUNT AND AS A PERCENTAGE OF INCREASE OVER AND ABOVE THE AMOUNT OTHERWISE PERMITTED BY THE LIMITATIONS OF THIS SECTION 13, AND THE SIZE OF THE INCREASES IN THE EXISTING DEVELOPED AREA AND THE JURISDICTION'S RESIDENTIAL AND EMPLOYMENT POPULATIONS ALL OF WHICH SHALL BE EXPRESSED AS ACTUAL AMOUNTS, AND AS A PERCENTAGE OF INCREASE OVER EXISTING LEVELS.

III. AN ITEMIZATION OF THE COSTS AND IMPACTS OF THE PROPOSED DEVELOPMENT UPON NEW OR EXISTING PUBLIC INFRASTRUCTURE AND SERVICES AND NEW, INCREASED OR ADDITIONAL TAXES, PUBLIC DEBT OR FISCAL OBLIGATIONS REQUIRED BY THE PROPOSAL WHICH SHALL BE EXPRESSED AS DOLLAR AMOUNTS AND AS A PERCENTAGE OF INCREASE OVER EXISTING RATES OF TAXES, PUBLIC DEBT OR FISCAL OBLIGATION.

(9) IMPLEMENTATION. IN ORDER TO DETERMINE THE SIZE OF THE BASE DEVELOPED AREA WITHIN EACH JURISDICTION, WITHIN 180 DAYS AFTER THIS SECTION 13 IS APPROVED BY THE VOTERS, ANY POLITICAL SUBDIVISION OR ENTITY EMPOWERED TO AUTHORIZE NEW CONSTRUCTION OR DEVELOPMENT SHALL COMPLETE A CENSUS OF ALL EXISTING BUILDINGS AND STRUCTURES CERTIFIED, OR PREVIOUSLY CERTIFIED FOR USE AND OCCUPANCY TO WHICH ITS AUTHORITY APPLIES ON THE DATE THIS SECTION 13 IS APPROVED BY THE VOTERS.

(10) ANNEXATION. THIS AMENDMENT DOES NOT PROHIBIT THE PROCESS OF ANNEXATION. ANNEXED LAND WILL BE SUBJECT TO THE PROVISIONS OF THIS SECTION 13 AND ANY PART OF ANY BASE DEVELOPED AREA ANNEXED WILL BE ADDED TO OR SUBTRACTED FROM THE JURISDICTIONS PARTY TO THE ANNEXATION.

(11) SEVERABILITY. IF ANY PROVISION OF THIS SECTION OR ITS APPLICATION IN ANY PARTICULAR CASE, IS HELD INVALID, THE REMAINDER OF THE SECTION AND ITS APPLICATION IN ALL OTHER CASES, SHALL REMAIN UNIMPAIRED.

(12) DEFINITIONS. AS USED IN THIS SECTION:

(A) "AFFORDABLE HOUSING" MEANS THAT MONTHLY RENTS OR MONTHLY MORTGAGE PAYMENTS, INCLUDING PROPERTY TAXES, HOMEOWNERS INSURANCE, AND UTILITIES, DO NOT EXCEED 30 PERCENT OF THE MEDIAN ADJUSTED GROSS ANNUAL INCOME WITHIN THE JURISDICTION OR THE STATE, WHICHEVER IS LOWER.

(B) "BASE DEVELOPED AREA" INCLUDES:

(I) THE MINIMUM LAND AREA REQUIRED BY ANY ZONING OR OTHER REGULATION TO SITE EACH EXISTING BUILDING OR STRUCTURE CERTIFIED OR PREVIOUSLY CERTIFIED FOR USE AND OCCUPANCY ON THE DATE THIS SECTION 13 IS APPROVED BY THE VOTERS.

(II) THE SITE OCCUPIED BY EXISTING STRUCTURES PREVIOUSLY CERTIFIED FOR USE OR OCCUPANCY IN DISREPAIR AND UNSUITABLE FOR OCCUPANCY AT THE TIME OF THIS SECTION 13 TAKES EFFECT. THEIR REPAIR AND REUSE OR REPLACEMENT SHALL BE ALLOWED AND SHALL BE INCLUDED AS PART OF THE BASE DEVELOPED AREA WITHIN EACH JURISDICTION.

(III) LAND DEDICATED AS PARKS OR OPEN SPACE ON OR BEFORE THE DAY THIS SECTION 13 TAKES EFFECT OR ANY PART OF ANOTHER JURISDICTION'S BASE DEVELOPED AREA ANNEXED TO THE JURISDICTION THEREAFTER.

(C) "BASE DEVELOPED AREA" DOES NOT INCLUDE:

(I) THE LAND REQUIRED TO SITE STRUCTURES APPROVED FOR CONSTRUCTION AND NOT YET BUILT OR ANY OTHER NEW STRUCTURES NOT COMPLETED AND APPROVED FOR USE OR OCCUPANCY ON THE DAY THIS SECTION 13 IS APPROVED BY THE VOTERS.

(II) ANY EXCESS OR SURPLUS LAND WITHIN A PARCEL OVER AND ABOVE THE LAND REQUIRED BY LOCAL ZONING OR OTHER RULES TO SITE ALL STRUCTURES EXISTING ON THE DATE THIS SECTION 13 IS APPROVED BY THE VOTERS.

(III) THE LAND OCCUPIED BY ANY STREETS, ROADS, HIGHWAYS, OR OTHER RIGHTS–OF–WAY EXISTING WITHIN EACH POLITICAL SUBDIVISION ON THE DATE THIS SECTION 13 IS APPROVED BY THE VOTERS OR THAT PART OF ANY BASE DEVELOPED AREA ANNEXED BY ANOTHER JURISDICTION THEREAFTER.

(D) "DEDICATED" LAND, IS LAND USED FOR OPEN SPACE, PARKS, OR OTHER PUBLIC USES WHICH REQUIRES VOTER APPROVAL TO BE ELIGIBLE FOR CONVERSION TO PRIVATE USE FOR NEW CONSTRUCTION OR DEVELOPMENT.

(E) "DWELLING" MEANS ANY BUILDING OR PORTION THEREOF WHICH IS USED AS A PRIVATE RESIDENCE OR SLEEPING PLACE OF ONE OR MORE PERSONS BUT NOT INCLUDING HOTELS, MOTELS, TOURIST COURTS, RESORT CABINS, CLUBS, HOSPITALS, OR SIMILAR USES.

(F) "DWELLING UNIT" MEANS A BUILDING OR ANY PORTION OF A BUILDING DESIGNED FOR OCCUPANCY AS INDEPENDENT LIVING QUARTERS FOR ONE OR MORE PERSONS HAVING DIRECT ACCESS FROM THE OUTSIDE OF THE BUILDING OR THROUGH A COMMON HALL AND HAVING LIVING, SLEEPING, KITCHEN AND SANITARY FACILITIES FOR THE EXCLUSIVE USE OF THE OCCUPANTS.

(G) "EXCESS LAND" MEANS ADDITIONAL LAND IN A SINGLE PARCEL NOT LARGE ENOUGH UNDER EXISTING ZONING REGULATIONS OR OTHER RULES TO BUILD ANOTHER BUILDING AND INSUFFICIENT TO PERMIT SUBDIVISION OF THE PARCEL FOR THE CONSTRUCTION OF ANOTHER BUILDING OR STRUCTURE.

(H) "HISTORIC PROPERTIES" MEANS THE RESOURCES INCLUDING BUILDINGS, STRUCTURES, OBJECTS, SITES, DISTRICTS AND LAND AREAS THAT ARE OF HISTORICAL SIGNIFICANCE.

(I) "HISTORICAL SIGNIFICANCE" MEANS HAVING IMPORTANCE IN THE HISTORY, ARCHITECTURE, ARCHEOLOGY OR CULTURE OF THE UNITED STATES, THE STATE, OR ANY POLITICAL SUBDIVISION THEREOF.

(J) "JURISDICTION" MEANS:

(I) THE TERRITORIAL RANGE OF AUTHORITY OR CONTROL OF A GOVERNMENTAL ENTITY OR POLITICAL SUBDIVISION.

(II) THE POLITICAL SUBDIVISION WHICH EXERCISED AUTHORITY OR CONTROL WITHIN A PARTICULAR TERRITORIAL RANGE OR AREA.

(K) "LANDMARK" MEANS:

(I) A BUILDING OR SITE HAVING HISTORICAL SIGNIFICANCE AND MARKED FOR PRESERVATION BY A GOVERNMENT ENTITY OR ITS DESIGNEE.

(II) A PROMINENT AND IDENTIFYING FEATURE OF A LANDSCAPE.

(L) "LOW–INCOME HOUSING" MEANS THAT MONTHLY RENTS AND HOUSING COSTS DO NOT EXCEED 30 PERCENT OF THE OCCUPANT'S GROSS INCOME WHICH MUST BE LESS THAN 60 PERCENT OF THE MEDIAN ANNUAL ADJUSTED GROSS INCOME WITHIN THE STATE OR THE JURISDICTION, WHICHEVER IS HIGHER.

(M) "NATURAL LAND" MEANS:

(I) UNDEVELOPED, RELATIVELY UNDISTURBED LAND OR A REMNANT OF AN AREA'S ORIGINAL NATURAL LANDSCAPE WHICH MAY OR MAY NOT BE FEASIBLE FOR DEVELOPMENT AND PERHAPS SUPPORTING SIGNIFICANT ECOLOGICAL HABITAT OR GEOLOGICAL FORMATIONS OR POSSIBLY CONTAINING RARE, THREATENED, OR ENDANGERED SPECIES OR HABITAT.

(II) A SITE ADJACENT TO ANOTHER PROTECTED NATURAL RESOURCE THAT TOGETHER WOULD SUPPORT A LARGER OR MORE DIVERSE NATURAL HABITAT.

(N) "OPEN SPACE" MEANS ALL PUBLIC AND PRIVATE LANDS NOT PART OF THE MINIMUM LAND AREA REQUIRED BY ZONING TO SITE AN EXISTING BUILDING OR USE, IN THEIR ACTUAL OR APPROXIMATE NATURAL STATE, PARKS AND RECREATION LANDS, GREENBELT AND AGRICULTURAL BUFFER ZONES, SCENIC EASEMENTS, FLOODPLAINS, PATHS AND TRAILS, HISTORIC MONUMENTS, WILD RIVERS, WILDERNESS AREAS, WILDLIFE HABITATS, AND COMMUNITY OPEN SPACE LANDS.

(O) "NEW CONSTRUCTION OR DEVELOPMENT", IS THE MAKING OF NEW BUILDINGS, OR OTHER STRUCTURES, IMPROVEMENTS OR ALTERATIONS UPON OR TO NATURAL LANDS OR OPEN SPACE NOT PART OF ANY BASE DEVELOPED AREA, OR PARKS OR OPEN SPACE THEREIN DE–DEDICATED AFTER THE APPROVAL OF THIS SECTION 13 BY THE VOTERS.

(P) "STRUCTURE" MEANS SOMETHING CONSTRUCTED, ESPECIALLY A BUILDING OR A RELATED PART THEREOF.

(Q) "SURPLUS LAND" MEANS ENOUGH ADDITIONAL LAND IN A SINGLE PARCEL TO BUILD ANOTHER BUILDING UNDER EXISTING ZONING REGULATIONS OR OTHER RULE OF THE JURISDICTION WITHIN WHICH IT IS LOCATED.